Day, J.
 

 This controversy centers about the construction to be given the words “their legal representatives,” as used in Section 8577, General Code. It is conceded that the undivided one-half of this 80 acres came to Sorena Larkins by descent from his father, John Larkins, and passes, by Section 8573, to the heirs at law of his father, John Larkins, being the ancestor from Avhom the estate
 
 *644
 
 came. The title to the remaining undivided 40 acres, being a title by purchase, upon the death of Sorena Larkins passed to his widow, Mary Ellen Harkness Larkins. She died intestate, without children, and having consummated a second marriage with one John Routson. The devolution of the title to this half of the undivided 80 acres must be governed by Section 8577, General Code, which recites as follows:
 

 “When the relict of a deceased husband or wife dies intestate and without issue, possessed of any real estate or personal property which came to such intestate from a former deceased husband or wife by deed of gift, devise or bequest, or under the provisions of section eighty-five hundred seventy-four, then such estate, real and personal, shall pass to and vest in the children of such deceased husband, or wife, or the legal representatives of such children. If there are no children or their legal representatives living, then such estate, real and personal, shall pass and descend, one-half to the brothers and sisters of such intestate, dr their legal representatives, and one-half to the brothers and sisters of such deceased husband or wife from which such personal or real estate came, or their legal representatives.
 

 “When such relict dies intestate and without issue, possessed of any real or personal property which came to such intestate under the provisions of the fifth subdivision of section eighty-five hundred and seventy-three, such estate shall pass and descend, one-half to the brothers and sisters of such intestate, or their legal representatives, and one-
 
 *645
 
 half to the brothers and sisters of such deceased ancestor of whom said intestate is the relict, or their legal representatives.”
 

 It will be noted that this section of the General Code, relative to descent and distribution of property, was passed long after the ancestral and non-ancestral Sections (8573, 8574, 8575, and 8576), and it seems to be recognized by this court that the purpose of the enactment of said section was to avoid the rule laid down in
 
 Brower
 
 v.
 
 Hunt,
 
 18 Ohio St., 311. In
 
 Stembel
 
 v.
 
 Martin,
 
 50 Ohio St., 495, at page 518, 35 N. E., 208, 210, it is said:
 

 “The act of 1857 was construed in
 
 Brower
 
 v.
 
 Hunt,
 
 18 Ohio St., 311. It was there claimed, that property which had come from a deceased husband to his widow, under Section 2 of that act, descended, upon her decease without issue and intestate, as ancestral property, under Section 1, to the brothers and sisters of the deceased husband. It was held, however, that her brothers and sisters inherited, under the provisions of Section 2, the whole of the property she had so received from the estate of her husband. The apparent or supposed hardship and injustice resulting from the statutes, according to that interpretation, gave rise, no doubt, as counsel on both sides maintain, to the supplemental act of 1877.”
 

 In
 
 Stockton
 
 v.
 
 Frazier,
 
 81 Ohio St., 227, 233, 90 N. E., 168, 170 (26 L. R. A. [N. S.] 603), this court said:
 

 “The supplemental act of 1877 (Section 4162, Revised Statutes), under consideration in
 
 Stembel et
 
 
 *646
 

 al.
 
 v.
 
 Martin et al., supra,
 
 was enacted to remove the apparent or supposed hardship and injustice resulting from the statute as so interpreted.- The supplemental act provides that in such event one-half of the estate shall descend to the brothers and sisters of the intestate, or their legal representatives, and one-half to the brothers and sisters of such deceased husband or wife, or their personal representatives.”
 

 The section, as originally enacted in 1877 (74 Ohio Laws, 81), by its title was made “supplementary to the act entitled ‘An act regulating descents and the distribution of personal estates,’ passed March 14, 1853, (S. & C., 501), and to the various acts amendatory thereof,” and related to property which came to the intestate from a deceased husband or wife under the second section of the act of 1853 and the acts amendatory thereto. The descent provided as follows:
 

 “Then such estate, real and personal, shall pass and descend, one-half to the brothers and sisters of such intestate, or their legal representatives, and one-half to the brothers and sisters of such deceased husband or wife from which such personal or real estate came, or their personal representatives. ’ ’
 

 It is therefore to be noted that this statute was limited to one class of property, to wit, nonaneestral property held by the intestate spouse, and descending to the relict by operation of the non-ancestral section. The act was amended in 1881 (78 Ohio Laws, 107), and enlarged to embrace property “which came to such intestate from any
 
 *647
 
 former deceased husband or wife by deed of gift, devise or bequest,” as well as the purchase title property included in the original act, and the line of descent was changed to include children of the deceased husband or wife; such amendment being in the words following:
 

 “Then such estate, real and personal, shall pass to and vest in the children of said deceased husband or wife, or the legal representatives of such children. If there are no children or their legal representatives living, then such estate, real and personal, shall pass and descend, one-half to the brothers and sisters of such intestate, or their legal representatives, and one-half to the brothers and sisters of such deceased husband or wife from which such personal or real estate came, or their personal representatives.”
 

 In 1923 (110 Ohio Laws, 15) the last amendment to the section was made by the Legislature, and it enlarged the provision still further to include property acquired by the intestate relict under the fifth clause of General Code, Section 8573, and substitutes the phrase “legal representatives” for “personal representatives,” in referring to the representatives of the brothers and sisters of the husband or wife from whom the estate came. This amendment became effective 90 days after April 4, 1923. The death of Mary Ellen Harkness Larkins Routson occurred on November 13, 1924; the last-quoted amendment of the section in question being then in force and effect, but having no application to the facts in this case.
 

 A consideration of the history of Section 8577
 
 *648
 
 in connection with the earlier statutes of descent and distribution brings us to the conclusion that the purpose of the enactment of Section 8577 was to limit the quantity of property that should descend to heirs at law of the intestate, and to restore, as it were, a part thereof to the heirs at law of the deceased spouse from whom the property came. It seems apparent that the intent of the Legislature, in the original passage and subsequent amendments of Section 8577, General Code, in the absence of children of such deceased husband or wife or their legal representatives, was to make an equal division between the heirs at law and next of kin of the spouse from whom the estate came and the heirs at law and next of kin of the surviving and intestate spouse. Starting with the original enactment, though entitled an act supplemental to what is now Section 8574, its enlargement by adding ancestral to purchase title property, the broadening of the clause from “personal representatives” to “legal representatives,” all show an intent upon the part of the Legislature to broaden and liberalize the section rather than to curtail it.
 

 In
 
 Stembel
 
 v.
 
 Martin,
 
 supra, while the precise point herein involved was not before the court, yet Section 8577 (then Section 4162, Revised Statutes) was before the court for consideration. In the opinion in that case, among other things relating to this section, it is said, at page 519 of 50 Ohio St., (35 N. E., 210):
 

 “The Legislature appears rather to have accepted the rule established by the decision referred
 
 *649
 
 to
 
 [Brower
 
 v.
 
 Hunt],
 
 and, treating such property as nonancestral, designed by the act in question, to secure in the future, one half of the property to the relatives of the deceased husband or wife,’ and the other half to those of the relict. Such a division appeared to the legislative body to be just and equitable, and that, we think, was the practical end sought, and not the creation of a new class of ancestral estates.
 

 “The act undoubtedly establishes a new line of succession, in that it divides into two equal parts the property which before its enactment went entirely to the brothers and sisters of the intestate relict, and transmits one [half] to the brothers and sisters of the former deceased husband or wife; but it prescribes no express rule as to how the brothers and sisters shall take.”
 

 At page 520 of 50 Ohio St., (35 N. E., 211), it is said: “The act in question became a part of the statutes of descent, and was enacted to supply some defect in then existing legislation, or correct some evil growing out of it. It contains no repealing clause, and did not operate to repeal by implication, any of the statutory provisions then in force, except in so far as it is wholly irreconcilable with them; and must, therefore, be construed in its proper connection with those statutes, and so as to leave effective all of their provisions, not clearly changed or abrogated by it, keeping in view the mischief which it was intended to remedy. The substantial hardship and injustice growing out of the act of 1857, as construed in
 
 Brower
 
 v.
 
 Hunt,
 
 was that the whole of the nonancestral property
 
 *650
 
 which came to the relict from the former deceased husband or wife, descended upon the death of the relict, to his or her kindred; none of it to the kindred of the deceased husband or -wife from whom the estate came. The remedy provided by the supplementary act consisted in dividing the property into two moieties, and giving one to the kindred of each.”
 

 And at page 521 of 50 Ohio St., (35 N. E., 211), it is said: “The whole of the mischief complained of was cured, by taking one half of the property from that line of descent, and giving it to the brothers and sisters of the former deceased husband or wife, leaving the other half to descend as the whole of such property had theretofore descended under the provisions of the second section of the act of 1857; the object and scope of the supplemental statute being, we think, to limit the quantity of the property that should thereafter so descend, and not to change its course of descent.”
 

 The foregoing are, of course, only excerpts from the opinion in the case cited, but they give an indication of the view of the court in that case upon the intention of the Legislature as to an equal division of the property coming within the purview of Section 8577.
 

 Our attention is called to certain lower court-cases in this state, but sufficient is it to say that we do not agree with the conclusions therein reached as to the construction to be given Section 8577 under the facts presented in this case, and all but one of such cases may be distinguished upon the facts.
 

 
 *651
 
 We find no cases decided by this court which are similar to the case at bar; but by the construction given Section 8577 in
 
 Stembel
 
 v.
 
 Martin, supra, Stockton
 
 v.
 
 Frazier, supra,
 
 and
 
 Center
 
 v.
 
 Kramer, Adm’r.,
 
 112 Ohio St., 269, 147 N. E., 602, we are of opinion that such a construction of Section 8577 as would effectuate the intention of the Legislature is the one that should be given, to wit, that the expression “legal representatives,” as used therein, is tantamount to next of kin or heirs at law of such deceased brothers and sisters.
 

 While it is quite true that the words “legal representatives,” as used in our statutes of descent and distribution, are generally interpreted as meaning “lineal descendants,” yet to give that meaning to the phrase in Section 8577 is to deny the plain intent of the Legislature in effecting the division of the quantity of property that came. from the deceased spouse of the intestate relict. and to allow the whole of such property to pass to those entitled to inherit from such intestate-relict, to the exclusion of those entitled to. inherit from the deceased spouse from whom the estate came. While equitable considerations do not avail in the construction of statutes of descent, yet the rule that the intention of the Legislature must be arrived at from the words employed still holds good. To hold that “legal representatives” means “lineal descendants” exclusively is to do violence to the plain legislative intent.
 

 “That which is plainly implied in the language of a statute is as much a part of it as that which is expressed.”
 
 Doyle
 
 v.
 
 Doyle, Jr.,
 
 50 Ohio St., 330, 34 N. E., 166.
 

 
 *652
 
 A significant fact is that when the Legislature desired to give a definite construction to the phrase “legal representatives,” it so did, as is shown by the amendment of Section 8578, General Code, personal property section, passed March 12, 1925 (111 Ohio Laws, 32), which provides: “The term ‘legal representative’ as used herein shall be given the same meaning as under Section 8574 of the General Code.”
 

 No reference is made to the meaning of the phrase in any other section of the General Code, and personal property, as well as real, is disposed of by Section 8577.
 

 A research of the authorities as to the definition of the phrase “legal representatives” discloses a number of meanings, such as, administrators or executors, assignee or grantee, trustee, but, after all, such phrase is to be construed in the light of the ■ context, the subject-matter, and the circumstances under which it is used. Many cases might be cited in support of this doctrine, but it is so wéll recognized that it is unnecessary.
 

 It is claimed by the brothers and sisters of Mary Ellen Harkness Larkins Routson that under Section 8576, General Code, they are entitled to inherit more than the one-half, because there are no other parties who can take this estate under any other section of the Code. An examination of Section 8576 discloses that it was passed for the purpose of taking care of those cases which do not fall within the conditions and limitations of the three preceding sections.
 

 In view of the fact that the property in ques
 
 *653
 
 tion came to Mary Ellen Harkness Larkins by virtue of Section 8574, to wit, the purchase title section, and not under Section 8573, the ancestral section, we are of opinion that Section 8576 applies only when none of the three preceding sections applies, and therefore the Harkness heirs could in no event secure more than the one-half of the undivided 40 acres in dispute.
 

 In the statute under consideration, our conclusion is that the intent of the Legislature, in the use of the phrase “their legal representatives,” was to divide the property into two parts, one-half to the heirs at law of the intestate relict, and one-half to the heirs at law of the deceased spouse from whom the property came. It follows, therefore, that the undivided one-fourth interest of the 80 acres found by the Court of Appeals to pass to the surviving husband of Mary Ellen Harkness Larkins Routson should pass to the heirs at law of the deceased brothers and sisters of Sorena Larkins, the first husband of said Mary Ellen Harkness Larkins Routson, from whom she acquired the estate, subject, however, to the dower estate of her surviving husband, John Routson; and so much of the decree of the Court of Appeals, therefore, as passes the *4tle to the surviving husband, John Routson, is reversed, and in other respects the said judgment is affirmed.
 

 ■Judgment affirmed in part and reversed in part.
 

 Marshall, C. J., Allen, Kiniiade, Robinson, Jones and Matthias, JJ., concur.