BILLMAN v. BILLMAN ET AL.

*Wills—"Heirs" construed—Use of land devised to son for 20 years—Fee in son 20 years after testator's death—Son dying within 20 years, remainder to heirs of son— "Heirs" interpreted in legal sense with reference to ancestral property—Section 8573, General Code—Son took qualified, determinable or base fee—Character of devise fixed at death of testator—Son's widow took life estate and fee in ancestor's heirs.*

1. Term "heirs" in will is a flexible one and should be construed so as to give effect to intention of testator as it appears from four corners of will itself, interpreted in light of circumstances which testator knew at time.

2. Term "heirs" in will will be given its legal and technical meaning where no intention of testator to otherwise use it appears from will, when interpreted in light of circumstances testator knew at time.

3. Will devising use of land to son, title to be vested in son in fee simple 20 years after testator's death, remainder during said 20 years to pass to son's heirs, *held* to show intention to use word "heirs" in legal sense with reference to ancestral property, in view of circumstances which testator knew at time.

4. Under will devising to son use of land which should become his in fee simple after 20 years after testator's death, remainder during said 20 years to pass to his heirs, land was devised to son in fee, subject to be divested on happening of certain event, and son took qualified, determinable, or base fee.

5. Character of estate devised to son, which son's widow claimed as heir, whether ancestral or nonancestral, was fixed at death of testator and could not depend upon date of death of son.

6. Under will devising to son use of land which 20 years after testator's death should become his in fee simple, remainder during said 20 years to pass to son's "heirs," upon son's death, within the 20 years, his widow was entitled to life estate in premises, and at her death title to pass

to heirs of ancestor from whom it came, under Section
8573, General Code.

(Decided January 31, 1927.)

APPEAL: Court of Appeals for Sandusky county.

*Messrs. Metzger & Bracy,* for plaintiff.
*Messrs. Young & Young,* for defendants.

CULBERT, J.  Irene Billman instituted this action
in the court of common pleas of Sandusky county
against James Billman, George Billman, and Frank
Billman for the purpose of having her title quieted
to 40 acres of land in the northeast quarter of Sec-
tion 13, in York township, Sandusky county, Ohio,
and for construing the will of George Billman, de-
ceased.  An answer and cross-petition was filed by
the defendants, denying the material allegations of
the petition.  They, too, asked for a construction
of the will of George Billman, deceased, that they
be decreed the title to said premises, and that the
petition of the plaintiff be dismissed.  The case
was heard in the court of common pleas, and that
court construed the will to mean that plaintiff be
given a fee-simple title to the premises described
in the petition, and a decree was entered quieting
her title to the same.  The case is now in this court
on appeal, prosecuted by the defendants to secure
a decree in their behalf.  The controversy arises
over the proper construction of items 3, 4, 5, and
8 of the will of George Billman, deceased, which
read as follows:

"Third.  I give, devise and bequeath to my son,
James Billman, the use of the forty acres of land
on which he now resides, being the north half of

the east half of the northeast quarter of section fourteen in said township and county, subject to the payment of one-third of the aggregate proceeds thereof, free from all farming expenses, to be paid to my wife, Mary Ann Billman, in money annually, as long as she shall live; such proceeds being determined as the aggregate after a tenant's half share is deducted. And at twenty years after the date of my death said land shall become his, absolutely, in fee simple. The remainder during said twenty years shall pass to the heirs of James Billman.

"Fourth. I give, devise and bequeath to my son George Billman, the use of the forty acres of land (less the schoolhouse ground) across way and being the south half of the east half of the southeast quarter of section eleven, in said township and county, subject, however, to all the provisions in item third following the word subject, in the fourth line, made applicable to George Billman, my son.

"Fifth. I give, devise and bequeath to my son, Claude Billman, the use of the forty acres of land fronting on the county line road, being the northeast quarter of section thirteen in said township and county, the east end thereof, subject to the conditions and reservations of items third and fourth.

"Eighth. All the rest, remainder and residue of my estate, real, personal and mixed, I give, devise and bequeath to my sons, James, George, Claude and Frank and their heirs share and share alike, subject to the one-third income to Mary Ann Billman, named in item third."

Certain stipulations were agreed to by the parties, as follows:

"It is agreed that the will of George Billman,

the testator, was executed July 26, 1901, and he died July, 1909.

"That at the time of the making of the will of George Billman the testator had four sons, James Billman, George Billman, Claude Billman and Frank Billman. That these sons were all living at the time of his death.

"That at the time that he made the will his son James Billman was married and had children. That as to him the same situation existed at the date of the death of the testator. At the date that the will was made and also at the date of the death of the testator, his son George Billman was married and had children living.

"That his son Frank Billman was not married at the date of the making of said will nor at the date of the death of said testator.

"That his son Claude Billman, at the date of the making of the will was married but had no children. At the date of the death of the testator the said Claude Billman was unmarried, his first wife having secured a divorce from him, and there were no children. That he was married to his second wife March 1, '20, and that there were no children of this marriage.

"That the said Claude Billman never attempted to sell or dispose of the estate granted to him under the terms of the said testator's will. That the widow of the testator, Mary Ann Billman, is dead."

The proper construction of item fifth of the testator's last will and testament, which concludes with this clause, "subject to the conditions and reservations of items third and fourth," if we interpolate into it the conditions and reservations of

item third, incorporated therein by the testator by reference, would read as follows:

"I give, devise and bequeath to my son, Claude Billman, the use of the forty acres of land fronting on the county line road, being the northeast quarter of section thirteen in said township and county, the east end thereof, subject to the payment of one-third of the aggregate proceeds thereof free from all farming expenses, to be paid to my wife, Mary Ann Billman, in money annually, as long as she shall live; such proceeds being determined as the aggregate after a tenant's half share is deducted. And at twenty years after the date of my death said land shall become his, absolutely, in fee simple. The remainder during said twenty years shall pass to the heirs of Claude Billman."

The plaintiff in this case, Irene Billman, the surviving wife of Claude Billman, contends that item fifth should be so construed as to make it read as indicated, and we do not understand that the defendants seriously contend otherwise. In placing a construction upon item fifth, plaintiff contends that upon the decease of Claude Billman, without issue, within 20-year period, she, his surviving wife, took the property under the terms of the will, upon the theory that she was the sole heir of Claude Billman.

In what sense did the testator use the words "heirs of Claude Billman?" The term "heirs" is a flexible one and should be so construed as to give effect to the intention of the testator as it appears from the four corners of the will itself, interpreted in the light of the circumstances which the testator knew at the time, and the term will be given its legal and technical meaning where no in-

tention of the testator to otherwise use it appears from the will, when so interpreted. *Heath* v. *City of Cleveland,* 114 Ohio St., 535, 151 N. E., 649; *Larkins* v. *Routson,* 115 Ohio St., 639, 155 N. E., 227. Examining the instrument in the light of these rules, it does not appear that the testator used the word "heirs" in other than its legal sense, but the difficulty of interpretation in the instant case arises from the fact, that, as the question is presented, the word "heirs" is susceptible of two meanings, depending upon whether it was applied to ancestral or nonancestral property. As to the ancestral property of which Claude Billman died seized, in fee, his relict would receive a life estate, and at the death of such relict, his parents being dead, the property would pass to his brothers. Section 8573, General Code. As to nonancestral property, the sole heir of Claude Billman would be his relict, the plaintiff. It therefore becomes necessary to examine the instrument to discover in which of these two senses the testator used the word "heirs." The circumstances of which the testator knew are an important element in determining this question. At the time he made the will Claude Billman was married, but had no children, while at the date of the death of the testator he was unmarried. He was married to the plaintiff in March, 1920. James Billman and George Billman had children living. Frank Billman was unmarried.

By the terms of the will, title to the property described in item fifth vested in Claude Billman, subject to being divested and passing to his heirs if he died within the 20-year period, and, while, upon his death within that period, it would go to his heirs under the last will and testament of the

testator, yet we think that it follows that the testator used the word "heirs" with reference to ancestral property, the property in question being such in the hands of Claude Billman. The case of *Miller* v. *Miller*, 9 C. C. (N. S.), 242, 19 C. D., 451, affirmed without report in 77 Ohio St., 643, 84 N. E., 1130, which is commented upon in *Cultice* v. *Mills*, 97 Ohio St., 112, at page 120, 119 N. E., 200, is relied upon by the plaintiff. We think that case is distinguished from the instant case by the fact that in the former the land was devised to the son for life, with the remainder to his lawful heirs, while in the instant case it was devised to the son in fee, subject to being divested on the happening of a certain event. In the former case, the son took a life estate. In the latter or instant case, he took a qualified, determinable, or base fee.

It was not the intention of the testator that the premises involved in this suit should immediately pass in fee simple to strangers, or others than relatives by blood, upon the death of the son Claude. This is manifest from each and every of the disposal clauses set out in the five items of the will herein referred to, wherein the entire estate of the testator is disposed of. It being apparent that the widow would have received only a life estate, if the husband, Claude, had survived the 20-year period, it certainly could not have been the intent of the testator that the widow of Claude should receive any greater estate merely because her husband died before the 20-year period expired. The character of the estate, whether ancestral or non-ancestral, was fixed at the death of the testator, and could not depend upon the date of the death of Claude.

It therefore follows that the plaintiff is entitled to a life estate in said premises, and at her death the title thereto will pass to the heirs of the ancestor from whom it came.

*Decree accordingly.*

RICHARDS and WILLIAMS, JJ., concur.