Matthias, J.
The issue to be determined herein is, simply, the meaning and application of the clause, “then my said trustee shall * * * distribute the trust estate per stirpes among my heirs at law, according to the laws of descent and distribution now in force in the state of Ohio, which heirs at law shall be determined and distribution made as though my death had occurred at the time of the final termination of the trust hereby. created. ’ ’
It is argued that the quoted clause is ambiguous and contradictory. Applying the usual meaning of the English language, however, it is apparent to this court that the testator, by use of that clause, directed that the gift be distributed per stirpes among his heirs at law as such shall be identified as of the time of the termination of the trust by the application of the laws of descent and distribution in effect at the time the will was executed. The case of Tiedtke, Exr., v. Tiedtke, 157 Ohio St., 554, 106 N. E. (2d), 637, illustrates testator’s right to include such stipulations in the disposition of his gift, and it is our finding that his stipulations are clear and express.
It must be noted that, although the pertinent statute of descent and distribution here involved (Section 8574, General Code) was amended between the time the will was executed (1916) and the date of testator’s decease (1920), such amendment did not change the provisions applicable herein, and that the question of whether' the will speaks as of the date of its execution or as of the date of testator’s decease is immaterial. For the purpose of convenient reference, we will assume that the clause herein under consideration speaks as of the date the will was executed.
It is also noted that, although statutes relating to intestate descent and distribution, and interpretations thereof, play a major part in our consideration of this case, the gift herein under consideration passes by testate rather than intestate succession.
*226 Only Section 8574, General Code (Section 2105.06, Revised Code), a part of the “laws of descent and distribution” which ..were in effect at the time the will was executed (1916), is pertinent here, there being no question of ancestral property or equal consanguinity involved.
That section of the General Code reads as follows:
“If the estate came not by descent, devise, or deed of gift, it shall descend and pass as follows:
“1. To the children of the intestate and their legal representatives.
“2. If there are no children, or their legal representatives, the estate shall pass to and be vested in the husband or wife, relict of such intestate.
“3. If such intestate leaves no husband or -wife, relict to himself or herself, the estate shall pass to the brothers ■ and sisters of the intestate of the whole blood, and their legal representatives.
“4. If there are no brothers or sisters of the intestate of the whole blood, or their legal representatives, the estate shall pass to the brothers and sisters of the half-blood, and their legal representatives.
“5. If there are no brothers or sisters of the intestate of the half-blood, or their legal representatives, the estate shall .ascend to the father; if the father is dead, then to the mother.
“6. If the father and mother are dead, the estate shall pass to the next of kin, and their legal representatives, to and of the blood of the intestate.” (Emphasis added.)
A case in which this court applied Section 8574, supra, is Weisflock v. Sigling, 116 Ohio St., 435, 156 N. E., 905. In that .case the court, in a per curiam opinion, stated the following:
“It appears from the record that the owner of the property described in the amended petition died intestate; that such intestate left neither wife, child, or legal representatives thereof, nor brother or sister of the tvhole or half blood, or any representative thereof, and his father and mother had died previous to his death; that such property was nonancestral and descends under paragraph 6 of Section 8574, General Code. The next of kin living at the date of the death of said J. L. Seitz, to and of the blood of the intestate, was Michael Sigling, a first cousm. *227 This establishes the class entitled to inherit, and, there being no legal representatives of any deceased members of that class, it follows that Michael Sigling is entitled to all said estate.
“* * * it is held in Schroth, Admr., v. Noble, 91 Ohio St. 438, 110 N. E., 1067, that:
“ ‘The “next of kin” as used in this statute [Section 8574, General Code, Par. 6] refers to those persons who take intestate property under the statutes of descent and distribution (Steel, Admr., v. Kurtz, 28 Ohio St., 191, approved and followed) ; that each paragraph of Section 8574, General Code, must be read in connection with all other paragraphs for the purpose of determining who are next of Idn of the blood of the intestate.’
“Applying this principle, paragraph 6 of Section 8574 is construed to mean that the estate passes to the living next of kin and the legal representatives of deceased next of kin of the same class as the living next of kin.” (Emphasis added.)
To the same effect are Ewers v. Follin, 9 Ohio St., 327; Hasse v. Morison, 110 Ohio St., 153, 143 N. E., 551; and annotation on Ohio eases, 19 A. L. R. (2d), 191, 216.
The testator herein had a total of 27 nieces and nephews, 11 of whom were living at the time the trust terminated, 7 of whom were deceased leaving lineal descendants and 9 of whom were deceased without leaving lineal descendants. It is seen that an interpretation of the phrase, “legal representatives,” is necessary to a determination of the distribution herein, for the shares of the living heirs at law of the testator will be different if the phrase, “legal representatives,” is interpreted to mean “heirs at law” rather than “lineal descendants.” We are aware that the phrase has been determined to have various meanings by this court but are satisfied that as applied to the instant case it means lineal descendants, as so interpreted by the Probate Court. As stated by this court in the syllabus of Larkins v. Routson, 115 Ohio St., 639, 155 N. E., 227:
“The primary meaning of the phrase ‘legal representatives’ is ‘executors’ or ‘administrators’; yet other meanings are given the phrase, according to the context and the circumstances under which the same is used, such as ‘heirs at law,’ ‘next of kin,’ ‘trustees,’ ‘assignees.’ In the statutes of descent and distribu~ *228 tion in this state, the phrase ‘legal representatives’ is generally construed to mean ‘lineal descendants.’ ” (Emphasis added.)
The phrase used in paragraphs 3 and 6 of Section 8574, supra, and in the Sigling case, supra, is “legal representatives.” In accordance with the Larkins case, supra, however, we will assume that where it is so used the phrase, “lineal descendants,” is synonymous therewith and may be substituted therefor.
At the time the trust terminated (1955), the testator herein left no wife, child, legal representatives thereof, or brother or sister of the whole or half blood, but there were living at that time legal representatives of deceased brothers and a sister, i. e., testator’s nieces and nephews.
It is at once apparent that the nieces and nephews and the lineal descendants of deceased nieces and nephews of the testator herein take under paragraph 3 of Section 8574, as legal representatives, or lineal descendants, of deceased brothers or sisters, rather than under paragraph 6, as did Michael Sigling. It is also apparent, however, that paragraphs 3 and 6 are in harmony in that both provide for a descent and distribution to certain heirs at law “and their legal representatives,” i. e., “and their lineal descendants,” and that the clause of the will here under consideration, providing for a testamentary descent and distribution “per stirpes among my heirs at law,” is in harmony with both paragraphs of the statute. It follows that the application and interpretation by this court of paragraph 6 are controlling in our consideration of paragraph 3.
Appellants argue, however, that testator’s use of the phrase, “per stirpes,” indicates his intent that all takers under this provision of the will must take per stirpes, and that this means they may take only in a representative capacity. Appellants argue from this that the roots or stirpes of the testamentary gift under consideration must necessarily be found in an earlier generation of relatives of the testator than the nearest genera- ' tion having living members, all of whom must be deceased, in order that- the nearest generation having living members may take only by representation. Appellants argue further that the generation of testator’s relatives in which such roots or stirpes must be found is his four brothers and a sister, two of whom *229 were living at the time of testator’s decease, but all of whom were deceased in 1955, the time of determination of heirship pursuant to testator’s intent.
Appellees, on the other hand, argue that the roots or stirpes must be found in the nearest class of heirs at law having living members at the time heirship is determined.
Although we agree with appellants’ argument that all who take under the provision of the will here under consideration must take per stirpes, we must disagree with their interpretation of what constitutes a taking per stirpes.
Our research on the subject has led us to the conclusion that the only statement we could make regarding a taking per stirpes which would be unassailable by respectable authorities is the following statement from 16 A. L. R., 16:
“It is a common remark that the decisions on the question .as to when beneficiaries under a will are to take per capita, and when per stirpes are in hopeless confusion.”
. To this court, however, it seems beyond argument that when expressly used in a will both the phrase, “per stirpes,” and the phrase, “per capita,” are simply express designations by the testator as to who will or might be the beneficiaries of his bounty, and as to what capacity and to what extent such persons will share in such bounty.
A testator leaving a gift to his “heirs at law” has only two alternatives. He may direct that the gift is to be distributed either per stirpes or per capita. If he directs a per stirpes distribution, it follows that some generation must be designated as the roots or stirpes of the per stirpes gift. This is so even though he need not explicitly designate such generation (by using phrases such as, “to my brothers per stirpes,” “to my cousins per stirpes,” or “to my nieces and nephews per stirpes”) but may (by using a phrase such as, “to my heirs at law per stirpes”) leave the determination of such generation to a prescribed formula existing outside the will, such as the statutes of descent and distribution.
The term ,“per stirpes,” as used by a testator means simply that his devise or bequest is to be divided into as many equal shares as there are members of the root generation, counting both living and deceased members leaving lineal descendants, *230 with an equal share being distributed to each living member .of such generation and the share of each deceased member of such generation being divided and subdivided, in turn, per stirpes, among his lineal descendants. The term, “per capita,” as used by a testator means simply that his devise or bequest is to be divided into as many equal shares as there are surviving members of a certain generation or class of people, such as “brothers and sisters,” “cousins,” or “nieces and nephews,” with an equal share being distributed to each such surviving member, and the lineal descendants of any deceased member receiving nothing.
In considering the meaning and application of the phrase, “per stirpes,” as used in a will, that term must be viewed as a direction by the testator authorising a taking by representation by certain people under certain conditions, i. e., in the instant case, a taking by representation by lineal descendants of mem.; bers of the root generation who are deceased, rather than as a description of how certain individuals take under a per' stirpes distribution. In fact, the writer fails entirely to see how an heir at law who is the recipient of a per stirpes gift can be said to take his share other than per stirpes, in a general sense of the phrase, regardless of whether he takes as a living member of the root generation or as the lineal descendant of a deceased member of such generation. This is so because by the use of the phrase, “per stirpes,” the testator limits the extent of the interest of each member of such generation, whether living or deceased, to only one of the equal shares which are determined by the total of both the living members of such generation and the deceased members thereof leaving lineal descendants. Conversely, an heir at law taking by virtue of a per capita order of distribution would take an equal share of the gift as determined by the number of surviving members of the general class, “heirs at law.”
Considering a testamentary gift to heirs at law, it is seen that, as between surviving members of a generation in which the roots or stirpes of a per stirpes gift would be found, in which generation there are deceased members leaving lineal descendants, one who would take by virtue of a per stirpes distribution would never receive the same proportionate share of *231 such gift as he would if he took by virtue of a per capita distribution. Prom this it is clear that it can never properly be said that a surviving member of the root generation of a per stirpes testamentary gift takes per capita merely because lie takes in his own right.
There is, as we have said, confusion in the use by the courts of the phrase, “per stirpes,” including our own. We call attention to the eases of Ewers v. Follin, supra (9 Ohio St., 327), and Hasse v. Morison, supra (110 Ohio St., 153), wherein this .court did indicate that, in a situation, such as presented in the instant case, nieces and nephews, who were determined to be the roots or stirpes of a per stirpes intestate succession, took per capita, whereas grandnieces and grandnephews, who took by representation the shares of deceased nieces and nephews, took per stirpes. An examination of those cases, however, discloses that the recipients took their respective shares of the estate based in part upon certain statutes purporting to define “per stirpes” and “per capita,” which are no longer in existence and which did not affect the shares each received in the slightest manner. The eases uniformly hold that under such circumstances the estate is divided into as many equal shares as there are members of the root generation who are living and who have died leaving lineal descendants, with an equal share being distributed to each living member of such generation, and the share of each deceased member being divided and subdivided per stirpes among his lineal descendants.
It must here be noted that, although the laws of descent and distribution of the .state of Ohio have, throughout the years, been subjected to extreme changes by the General Assembly, the basic premises upon which this court has rendered its decisions with reference to such statutes have remained remarkably constant. This is evidenced by a reading of the cases cited herein. The instant decision is not a departure from these basic principles. This opinion represents merely an effort to explain and clarify one aspect of a highly complex field of law, which is unquestionably of great and general public interest since it affects each person in the state. Some of the language and terminology used herein may vary slightly from language and terminology used in the early cases. It can not *232 be emphasized too strongly, however, that these slight variations do not affect any basic premises which have heretofore been followed by this court.
An example of this is our question as to the propriety of statements by this court that surviving members of the root generation, as to a per stirpes gift to heirs at law, take “per capita.” This writer seriously doubts that any heir engaged in a controversy before the courts is much concerned with whether he is said to take “per capita” or “per stirpes.” It is, however, of prime importance to him whether a distribution is made per stirpes or per capita, as that determination affects his basic interest — the amount he receives. It is clear that we have not herein disturbed in the least orders of distribution by this court in cases similar to that before us. We have merely attempted to clarify and explain the sometimes obscure reasons upon which this court based its earlier conclusions.
What we have said may be summarized as follows:
1. Testator indicated that the testamentary gift here under consideration should pass to his heirs at law as they should be determined or identified at the time of the termination of the trust created by the will (which was 1955), but that heirship and distribution should be determined by the laws of descent and distribution in effect at the time the will was executed (1916).
2. The applicable statute of descent and distribution in effect in 1916 (Section 8574, General Code), as applied to the facts existent at the time the trust terminated (1955), identified testator’s heirs at law as the “legal representatives” (lineal descendants) of his brothers and sister, pursuant to paragraph 3 of Section 8574.
3. Testator’s express intent that his gift should descend to his heirs at law per stirpes is in harmony with paragraph 3 of Section 8574 which provides for a distribution of intestate property to “brothers and sisters * * * and their legal representatives [lineal descendants],” and the method of determining heir-ship and distribution in paragraph 3 is similar to that in paragraph 6 which has been interpreted and applied by this court.
From the summary above and from what we have said, it is clear that the interpretation and application by this court of paragraph 6 to an intestate descent and distribution are con *233 trolling in the instant ease which involves a provision for a testate descent and distribution pursuant to paragraph 3.
As stated by this court in the Sigling case, supra (116 Ohio St., 435):
“The next of kin living at the date of the death * * * of the' intestate, was * * * a first cousin. This establishes the class entitled to inherit.
“* # * paragraph 6 of Section 8574 is construed to mean that the estate passes to the living next of kin and the legal representatives of deceased next of kin of the same class as the living next of kin.” (Emphasis added.)
Thus, this court has determined that the roots or stirpes of an intestate descent per stirpes, pursuant to paragraph 6, shall be found in the nearest generation of heirs at law of the decedent, as identified by the applicable laws of descent and distribution, having living members at the time heirship is determined. Such determination being controlling in the instant case, it follows that the roots or stirpes of the testamentary gift per stirpes here under consideration must also be found in such generation.
It is our conclusion regarding this question that, where, as in the instant case, by using the general phrase, “heirs at law,” the roots or stirpes of a per stirpes devise or bequest are not specifically designated, such roots or stirpes will be found to be in the nearest generation of heirs at law of the decedent, having living members at the time heirship is determined, according to the applicable statutes of descent and distribution,’ and that generation shall comprise the “root generation.”
Since, in the instant case, the testator’s nieces and nehews represent the nearest generation of heirs at law having living members, it follows that they are the roots or stirpes, or the “root generation,” of the testamentary gift here under consideration.
As hereinbefore set out, there are 11 living members of such generation and 7 deceased members leaving lineal descendants at the time heirship is to be determined (1955). Applying the familiar rules of per stirpes distribution, as also hereinbefore set out, and as applied by this court i» all the *234 cases cited, it is clear that the Probate Court of Cuyahoga County correctly ordered that testator’s gift be divided into 18 equal shares, that each living niece and nephew receive one of such equal shares, and that one of such equal shares be divided per stirpes among the lineal descendants of each deceased niece and nephew.
It follows that the Court of Appeals correctly affirmed the judgment of the Probate Court, and that its judgment should be, and it hereby is, affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Bell and Herbert, JJ., concur.
Stewart, J., concurs in the syllabus, much of the opinion, and the judgment.
Taft, J., concurs in the syllabus and the judgment.