GRUHLER, ADMR., PLAINTIFF, *v.* HOSSAFAUS ET, DEFENDANTS.

Probate Court, Montgomery County.

No. 159911. Decided October 30, 1963.

72

*Messrs. Young, Pryor, Lynn, Strickland & Falke,* for plaintiff.

*Messrs. Bieser, Greer & Landis,* for defendants.

(ZIEGEL, J., of Preble County, sitting by assignment in Montgomery County.)

ZIEGEL, J. The decedent, whose administrator seeks a declaratory judgment in this action, died intestate on October 19, 1962, leaving as his heirs at law one brother, one sister, and two nieces and a nephew, who are the children of a deceased brother, F. W. Gruhler. F. W. Gruhler died a resident of Detroit, Michigan on July 21, 1962, apparently penniless, since no administration proceedings have been started on any estate he might have had in Michigan. Among the decedent's effects were found twenty one notes in varying amounts, given by F. W. Gruhler to the decedent, with the due dates on said notes

ranging from November 1, 1930 to December 31, 1944. Plaintiff now seeks authority to set off against the distributive share of the nieces and nephew in decedent's estate the sum total of the amount of these notes, with accrued interest, alleged to be a total sum of $47,991.53.

Two major questions present themselves: First, are nieces and nephews of an intestate decedent subject to having a debt of their father, who predeceased the decedent, set off against their distributive share, when decedent has a brother and sister still living? Secondly, since each of these notes on its face is outlawed by the statute of limitations, is the statute of limitations tolled by virtue of the fact that the payee on the notes was a non-resident of Ohio?

In support of the proposition that set-off should be permitted in this case, plaintiff cites Section 2113.59, Revised Code, as the same is construed by *Martin* v. *Martin, Admr.*, 56 Ohio St., 333, 46 N. E., 981. Section 2113.59, Revised Code, provides that "when a beneficiary of an estate is indebted to such an estate, the amount of the indebtedness . . . may be set off of by the executor or administrator against any testate or intestate share of the estate to which such beneficiary is entitled." Under this section, if F. W. Gruhler were living, and if the collection of the notes in question were enforceable, there is no question that set off could be applied. The query now before the court is whether F. W. Gruhler's death before his brother died precludes set off against the share of F. W. Gruhler's children. In other words, do these nieces and nephew take directly from their uncle, or do they take their share through their deceased father?

Insofar as it is applicable to this case, the statute of descent and distribution, Section 2103.06, Revised Code, provides that:

"When a person dies intestate having title or right to any personal property or to any real estate or inheritance in this state, such personal property shall be distributed and such real estate shall descend and pass in parcenary . . . in the following manner:

\* \* \* \* \*

(F) If there is no spouse, no children or their lineal descendants, and no parents surviving, to the brothers and sisters

. . . of the intestate or their lineal descendants, per stirpes."

Prior to January 1, 1932, this statute used the words "legal representatives" instead of "lineal descendants, per stirpes," *Martin* v. *Martin*, 56 Ohio St., 333, 46 N. E., 981, decided in 1897 under the old statute, held that "The personal property of an intestate who leaves neither wife nor child, passes to such of his brothers and sisters as survive him, and to the *legal representatives* of those who died before him, and children of a predeceased brother take in a representative character and subject to the indebtedness of their principal to the intestate." No cases have been found, or cited, dealing with this particular problem, that have been decided since 1932. The case of *Deibel* v. *McFadden*, 4 Ohio Opinions, 420 (1935), cited by plaintiff, is not in point since it involves a bequest under a will and the application of the anti-lapse statute, Section 2107.52, which specifically says that the issue of the deceased relative devisee "shall take the estate devised as the devisee would have done if he had survived the testator," so that the application of set-off is obvious here.

In view of the change in the language of the statute, the defendant nieces and nephew argue that *Martin* v. *Martin*, *supra*, is no longer the law. On the other hand, plaintiff cites cases tending to show that the words "legal representatives" and "lineal descendants, per stirpes" are synonymous. *Larkins* v. *Boutson*, 115 Ohio St., 639, 155 N. E., 227; *Kraemer* v. *Hook*, 168 Ohio St., 221, 6 Ohio Opinions (2d), 11, 152 N. E. (2d), 430. The answer, however, is found in another clarifying section of the statute of descent and distribution.

"If some of the children of an intestate are living and others are dead, the estate shall descend to the children who are living and to the lineal descendants of such children as are dead, so that each child who is living will inherit the share to which he would have been entitled if all the children of the intestate were living, and the lineal descendants of the deceased child will inherit equal parts of that portion of the estate to which such deceased child would be entitled if he were living.

"This section shall apply in all cases in which the descendants of the intestate, not more remote than lineal descendants of grandparents, entitled to share in the estate, are of unequal

degree of consanguinity to the intestate, so that those who are the nearest degree of consanguinity will take the share to which they would be entitled, had all the descendants in the same degree of consanguinity with them who died leaving issue, been living." Section 2105.13, Revised Code.

Prior to the effective date of the Revised Code, these two paragraphs were separate sections of the General Code, the first paragraph being Section 10503-8, General Code, and the second paragraph being Section 10503-9, General Code. With the exception that the words "lineal descendants" prior to January 1, 1932 read "legal representatives," these two paragraphs have been a part of the law of Ohio at least since March 14, 1853, when a then complete statute of descent and distribution became effective. See 51 Ohio Laws, 499. Section 2105.13, Revised Code, must therefore be read in pari materia with Section 2105.06 (F), Revised Code. The last part of the first paragraph provides that "the lineal descendants of the deceased child will inherit equal parts of that portion of the estate to which such deceased child would be entitled if he were living." Obviously here, if set-off is applicable to the share of the deceased child if he were living, it is also applicable to the shares of his lineal descendants. The second paragraph applies the same rule to more remote next of kin. Therefore, this Court holds that if F. W. Gruhler was indebted to plaintiff's decedent, Clarence Jacob Gruhler, that indebtedness may be set off against the shares which pass to F. W. Gruhler's children; that under these sections of the statute of descent and distribution, F. W. Gruhler's children do not take their shares directly from their uncle, but take them through their father, subject to the same burden as the share of their father would be if he were living.

The next question to be determined is whether F. W. Gruhler was actually indebted to the decedent. On its face, each of the twenty one notes was outlawed by the statute of limitations, the youngest of these notes being due over fifteen years ago. Section 2305.06, Revised Code. Section 2305.15, Revised Code, however, tolls this limitation period if the person against whom a cause of action accrues is out of the state. It further provides that "after the cause of action accrues, if he departs from the State . . . the time of his absence . . . shall not be com-

puted as any part of the period within which the action must be brought." The foregoing section contemplates causes of action which arise in Ohio and does not embrace causes of action which originate in a foreign jurisdiction. *Wentz* v. *Richardson*, 165 Ohio St., 558, 60 Ohio Opinions, 507, 138 N. E. (2d), 675.

All parties to these proceedings agree that F. W. Gruhler, during all of the periods covered by these notes, resided in the State of Michigan, and that in the case of notes the laws of the State of Michigan provide for a six year statute of limitations for causes of action that arise in that stsate. It is also agreed that during all of the years represented by these notes the decedent was a resident of Ohio. Therefore the Michigan six year statute of limitations applies only to those notes among the twenty one wherein the cause of action arose in Michigan. Although plaintiff presented all twenty one notes to the court for declaration, he concedes that the note numbered one, which is payable at Guaranty State Bank, Detroit, Michigan, and the note numbered fourteen, which contains no place of payment and is therefore presumed to be payable at the maker's place of residence, are barred by the Michigan statute.

Considerable question arises as to the place of payment of the notes numbered two through thirteen inclusive. Each of these is dated at Detroit, Michigan, the maker's place of residence. On each of these notes there is a blank space for the place of payment which, even as of the date of hearing, had not in any way been completed. Plaintiff argues that, since there is implied authority for the holder of a note to insert the place of payment where there is an unfilled blank for that purpose, *Citizens Bank* v. *Closson*, 29 Ohio St., 78, he, as the administrator of the original holder's estate and therefore the present holder of these notes, should now be permitted to insert a place of payment, to-wit: Dayton, Ohio. The Court agrees with the contention of the defendant that this request comes too late.

"If no place of payment is specified in a promissory note it is presumed to be payable at the place of residence of the maker, whether the omission to name the place of payment was intentional or the result of mere inadvertence." 40 Ohio Jurisprudence (2d), 79, Negotiable Instruments, §84. Until a place of payment was inserted in these notes, then, even

though there was a blank left for that purpose, there was no place of payment specified, and they were payable at the place of residence of the maker, F. W. Gruhler, to-wit: Detroit, Michigan. At any time during the life of these notes, their holder, plaintiff's decedent, could have filled in a place of payment. But he did not do so! When six years after date of payment elapsed, which it did even so far as the youngest of those notes here in question is concerned on October 22, 1944, no place of payment to that time having been inserted, they remained payable at Detroit, Michigan, and were then and there outlawed by the Michigan statute of limitations. Being dead, they cannot now be revived by the insertion of "Dayton, Ohio" as the place of payment. See Section 1303.14 (A), Revised Code. Collection of the notes numbered two through thirteen is, therefore, barred.

Notes numbered fifteen through twenty one, inclusive, are all payable at 923 W. Riverview Ave., Dayton, Ohio, the late residence of plaintiff's decedent. Since during all of the time represented by this group of notes, at least until his death in July, 1962, their maker, F. W. Gruhler, resided in Michigan, under the saving clause of Section 2305.15, Revised Code, these notes continued to be in full force and effect. *Meekison* v. *Groschner*, 153 Ohio St., 301, 41 Ohio Opinions, 298, 91 N. E. (2d), 673. Defendant's nieces and nephew, however, ingeniously contend that since they were themselves never indebted to the decedent, they should not be expected to defend against claims about which they knew nothing until his present action was commenced, and that therefore the statute of limitations should be tolled against F. W. Gruhler, their father, and no one else. In the fore part of this opinion the Court concluded that F. W. Gruhler's children, these defendants, do not take their shares in this estate directly from their uncle but rather through their father, subject to the same burden as the share of their father would be if he were living. Certainly, if F. W. Gruhler were now alive, his distributive share would be subject to the set-off of these valid notes by virtue of Section 2113.59, Revised Code. The rule of law previously announced still holds in this part of this opinion. Set-off of these seven notes against the distributive shares of F. W. Gruhler's children is, therefore, held not to be barred by any statute of limitations.

Note numbered twenty one, however, does present a different problem. Different from the other six notes which are simple in form, this note is on a form which specifies that the maker, F. W. Gruhler, has "deposited and pledged a collateral security for the payment of this note . . . . etc. . . . ." 25 shares each of the 7% cumulative preferred stock of the Elmhurst Rubber Co., Inc., of Elmhurst, L. I., New York, the book value of which is now $2,000.00." The form note further provides that . . . ." the holder of this note, in default in payment thereof, is authorized to sell at public sale, and at its option to purchase at such sale, and to apply the proceeds in payment of this note . . . . etc." None of the parties involved in these proceedings knows what happened to these pledged securities. Plaintiff suggests that since there was no proof that the decedent ever received these shares of stock, that part of note twenty one concerning their pledge should be ignored. Defendants contend that if judgment is taken for set-off purposes on note twenty one, this judgment should be credited with $2,000.00. No evidence was presented to the Court concerning the actual value of these twenty five shares either on the date the note was made, the date it became due, or at any other time.

The Court has found no cases, and none have been cited, to assist in resolving this problem. Reason requires this Court first to presume that the decedent actually did receive the twenty five shares of stock. Certainly it cannot be assumed that he would have accepted a note which on its face stated a falsehood. Secondly, since he originally acquired these pledged securities, and since they were not found among his effects after his death, it must be presumed that he somehow disposed of them. In view of all of the money which his brother owed him, it would be unreasonable to assume that decedent returned these securities to the maker of this note. He must, therefore, have exercised the power conferred upon him in note twenty one, and have sold them. When they were sold, and what they brought, no one knows. In view of the fact that he accepted them with the note stating that they had a book value of $2,000.00, it is not unreasonable to presume that decedent sold them five years later when the note became due for an amount sufficient at least to discharge note twenty one, in the

face amount of $855.00, with interest at the rate of 5% per annum. This Court therefore holds that note twenty one has been paid.

Judgment by way of set-off may therefore be taken against the children of F. W. Gruhler as to notes numbered fifteen, sixteen, seventeen, eighteen, nineteen, and twenty.

The parties to these proceedings being in disagreement as to the method of computing interest, the Court now determines that notes numbered fifteen, sixteen, and twenty should bear interest from their date (December 31, 1939) at the simple rate of five per cent per annum until paid. Each of these notes contains the statement "with interest at the rate of 5% per cent per annum." It is to be noted that this note does not state when interest is to be payable: it merely stipulates the rate. The contract between the parties to these notes did not provide for any such thing as annual rests in the payment of interest, and the Court will imply none. 31 Ohio Jurisprudence (2d), 23, Interest, §20. Also see Section 1343.02, Revised Code.

Notes numbered seventeen, eighteen, and nineteen carried no rate of interest. None will be charged until their due date, in each case December 31, 1944. Thereafter each of these notes will bear simple interest until paid at the rate of six per cent per annum. Section 1343.03, Revised Code.

It is further ordered that the inventory heretofore filed in the estate proper of Clarence J. Gruhler, Deceased, be amended to show the collectibility of the above numbered notes upon which judgment by way of set-off is hereby being rendered, the value thereof being principal plus interest computed as indicated to the date of decedent's death.

During the course of the hearing in this case certain questions on the admissibility of evidence arose. This evidence, if admitted, would have raised accounting problems involving notes numbered one through fourteen inclusive. Since these notes have been held to be barred by the statute of limitations, this evidence is now immaterial, and the objection to its admissibility is sustained.

Counsel for plaintiff may prepare an entry in accordance with this opinion, with costs to the estate.