## MILLER, Admr. v. SHEPARD, et.

Ohio Appeals, 9th Dist., Summit Co.

No. 1461. Decided June 1, 1928.

**First Publication of This Opinion.**

Syllabus by Editorial Staff.

**DECEDENTS' ESTATES—Children (100 A).**

(220 D) A child legally adopted under the laws of Ohio is included within the meaning of the word "issue" as used in 8577 GC.

Property inherited from a deceased spouse, under subdivision 2 of 8574 GC., descends from and not through such surviving spouse, under 8577 GC., upon his or her death, intestate.

Appeal from Common Pleas. Decree for Defendant, Shepard.

Carson, Moore & Howes, Akron, for Miller, Admr.

McCuskey & Cotton, Lemuel L. Woods, Akron, for Shepard, et.

### STATEMENT OF FACTS.

Raymond E. Miller, as administrator of the estate of George V. Miller, filed his petition in the common pleas under favor of 10857 GC., asking the court to instruct him as to whom he should pay the funds in his hands as such administrator.

The case was heard upon an agreed statement of facts, the pertinent parts of which are as follows:

On or about June 8, 1881, George V. Miller and Eliza A. Miller, who were husband and wife, adopted the defendant Louella Miller Shepard; that thereafter said adopting mother, Eliza A. Miller, died, and the adopting father, George V. Miller, afterwards remarried, his second wife being Jennie Miller. Said Jennie Miller acquired certain real estate by purchase during coverture with said George V. Miller and continued as the owner thereof in fee simple until her death. Said Jennie Miller died Nov. 12, 1925, intestate and without children either natural or adopted, and leaving her said husband, George V. Miller, who thus came into possession of said property, subject only to her debts, under the provisions of 8374 GC., as her only heir at law.

The plaintiff, Raymond E. Miller, was, on Nov. 28, 1925, appointed administrator of her estate, and on Jan. 21, 1926, and before her estate was settled, said George V. Miller died intestate, leaving no widow and no natural-born children or heirs thereof, but leaving said Louella Miller Shephard as his only adopted child.

Said George V. Miller also left two brothers and two sons of a deceased brother and said Jennie Miller also left two brothers and two sisters, all of whom were made parties defendant in the court below and are parties in this court. Said Raymond E. Miller was also appointed administrator of the estate of George V. Miller, deceased.

Said real estate left by said Jennie Miller, deceased, was sold by said Raymond E. Miller, as administrator of her estate, to pay debts. There was a balance left of $2,185.19, which said Raymond E. Miller, as administrator of the estate of Jennie Miller, turned over to himself as administrator of the estate of George V. Miller, deceased, and is the fund in his hands for distribution.

Said Louella Miller Shepard filed an answer and cross-petition, claiming said fund as sole heir of said George V. Miller, deceased, under the laws of descent and distribution. An answer and cross-petition was also filed on behalf of the brothers and sisters and legal representatives of both decedents, George V. and Jennie Miller, claiming that said fund passes and descends to them, under the provisions of 8577 GC.

FUNK, J.

Is an adopted child "issue" of the adopting parent within the meaning of the word "issue" as used in said Sec. 8577 GC., and thus stand in the same position as a natural-born child, and thereby prevent the property of an intestate decedent which came from a deceased spouse from passing one-half to the brothers

and sisters of the decedent and one-half to the brothers and sisters of the deceased spouse from whom the property came, under the provisions of said Sec. 8577 GC.

The court below held in favor of the adopting child, and the case is in this court on appeal by the brothers and sisters, or their heirs, of both decedents, the said George V. and Jennie Miller.

This fund is not ancestral and became the property of said George V. Miller upon the death of Jennie Miller, intestate and without issue, subject to the debts of her estate, under the provisions of 8574 GC., and that he could dispose of it during his life by contract or will as he saw fit, and upon his death without having disposed of it by will or otherwise, it passed not only to his children but that in the absence of children it descended alone to his heirs at law, was definitely settled by our Supreme Court in Brower v. Hunt, 18 O.S. 311.

This section (8577) of the Code is recognized by our Supreme Court as having been passed for the purpose of avoiding the supposed injustice of the rule established in Brower v. Hunt, which was that the whole of the non-ancestral property which came to the relict from a deceased spouse descended alone—upon the death of the relict intestate and without issue—to his or her kindred. Although our legislature enacted the law which is now said Sec. 8577 for the purpose of avoiding the supposed unjust effect of the rule established in Brower v. Hunt, the legislature at the same time seems to have acquiesced in and accepted the rule thus established. That the legislature acquiesced in and accepted this rule is apparent from the fact that this law as originally passed and the acts amendatory thereof merely limit the amount of property passing to the brothers and sisters, or their legal representatives, of such relict, by taking the half of it from them and giving it to the brothers and sisters, or their legal representatives, of the spouse from whom the property came, and left the other half to descend as the whole of such property had theretofore descended. This law, as originally enacted, and as amended, and as in force since the last amendment thereof became effective in July, 1923 (110 O.L. 13), does not change the character of such property or the way in which such property descends.

Stembel v. Martin, 50 O.S. 495.
Stockton v. Frazier, 81 O.S. 227.
Larkins v. Routson, 115 O.S. 639.

Furthermore, it is apparent that this fund is the property of George V. Miller, and descends from him as his property, and not through him, as the property of Jennie Miller.

A determination of the question under consideration depends upon the intention of the legislature in enacting our adoption laws, as appears from the language used to express that intention and the intention and purpose of enacting what is now said Sec. 8577 in the light of the holding in Brower v. Hunt and in subsequent decisions concurring in such holding and the language used by the legislature to express that intention and purpose.

We have hereinbefore pointed out the purpose of G.C. 8577. The language of our adoption statutes pertinent to the question at issue is found in G.C. 8030 and reads as follows:

"* * * and the child shall be invested with every legal right, privilege, obligation and relation in respect to education, maintenance and the rights of inheritance to real estate, or to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock * * *."

Some claim is made that the clause following this language in said section and which reads—

"providing such child shall not be capable of inheriting property expressly limited to the heirs of the body of the adopting parent or parents"—

supports the contention on behalf of the brothers and sisters of decedent. We think said clause has no bearing whatever upon the situation in this case, as there are no words in said Sec. 8577 expressly limiting such property to the heirs of the body of the adopting parent, and it merely uses the word "issue" alone, without any limitation.

In the case of Cochrel v. Robinson, 113 O.S. 526, the Supreme Court held that a designated heir, as provided for in G.C. Sec. 8598, was included within the word "issue" as used in said Sec. 8577. The judge who wrote the opinion in this case, in discussing the question, says that—

"These provisions of the statutes creating the rights of inheritance between the parties to an adoption or the parties to a designation of an heir and the provisions of the law of descent and distribution of intestate estates are in pari materia, and should, therefore, be construed together as one law"; and that

"The word 'issue' has several meanings in the law of decedents' estates. What its meaning may be in a given case depends upon the circumstances under which it is used, whether it be found in a will, a contract, or statute. Its primary signification imports descendants and has to do with the blood of the ancestor, but by general use the word 'issue' has often a wider signification and may include not only 'children,' but 'grandchildren,' 'descendants,' and 'adopted children.'"

Further along in this opinion the judge says:

"We therefore ascribe the same meaning to the expression 'child born in' lawful wedlock and 'issue of' those united in lawful wedlock,"

and quotes with approval the following from Buckley v. Frasier, 163 Mass., 527, 27 N. E. 769:

"The general intent of the statute (Pub. Sts., c. 148) is to place the adopted child in relation to either of his adopting parents, so far as their property is concerned, in the same position that he would be if their natural child. No stronger expression could be used than that which permits him to take the share of the property of the adopting parent 'that he would have taken if born to such parent in lawful wedlock.' That the adopted child should be deprived of that which is given so explicitly is not readily supposable. There is less difficulty in holding that the word 'issue' is used in the sense of child or children, as thus construed it includes adopted children. If construed otherwise, the adopted child no longer occupies the relation of a child born in lawful wedlock to either of his or her adopting parents."

In the case of Surman v. Surman, 114 O.S. 579, our Supreme Court held that the words "afterwards has a child living," comprehends

an adopted child living after the testator's death and who was adopted after the making of the will, and that such child could have the will revoked as to it, under the provisions of G.C. 10561, the same as a natural-born child could do.

Following the reasoning of the Supreme Court in these two cases and applying it to the language used in our adoption laws, and taking into consideration the purpose for which the law that is now G.C. Sec. 8577 was enacted, we are impelled to the conclusion that our legislature intended to confer upon a child legally adopted under the law of Ohio, all the inheritable rights of a child born in lawful wedlock, and that such adopted child is included within the meaning of the word "issue" as used in said Sec. 8577; in other words, so far as said section is concerned, the adoption laws give to the adopted child the status of a child actually born to the adopting parent in lawful wedlock.

This holding is also sustained in Smith v. Hunter, 86 O.S. 106, and is not inconsistent with other decisions in Ohio cited by counsel on either side.

Our attention is called to the case of Albright v. Albright, 116 O.S. 668, by counsel for the brothers and sisters. It will be observed that this case involves the construction of a will and has no application to the instant case.

It therefore follows that George V. Miller did not die intestate "without issue" and that the fund in question descends from him to the defendant Louella Miller Shepard as personal property under G.C. Sec. 8578.

A decree may be drawn accordingly. (Washburn, PJ., and Pardee, J., concur.)