**James Scott MYERS, et al., Plaintiff,**

v.

**CITICORP MORTGAGE, INC., Resource Bancshares Mortgage Group, Inc., and Madison Equity Mortgage Company, Defendants.**

No. CV–94–A–1019–N.

United States District Court, M.D. Alabama, Northern Division.

March 14, 1995.

---

Lawrence Scott Coogler, Coogler & Copeland, P.C., Tuscaloosa, AL, C. Knox McLaney, III, McLaney & DeBray, Montgomery, AL, Cathleen M. Combs, J. Eric Vander Arend, Daniel A. Edelman, Tara L. Goodwin, Michelle A. Weinberg, O. Randolph Bragg, Edelman & Combs, Chicago, IL, Charles Baird, Miami Beach, FL, for James Scott Myers, Shanna T. Myers.

Sterling G. Culpepper, Jr., Lois S. Woodward, Balch & Bingham, Montgomery, AL, for Citicorp Mortg., Inc.

Anne P. Wheeler, Johnston, Barton, Proctor, Swedlaw & Naff, Birmingham, AL, Alan H. Maclin, Robert J. Pratte, Mark G. Schroeder, Briggs & Morgan, P.A., Minneapolis, MN, for Resource Bancshares Mortg. Group, Inc.

Charles Wyatt Edmondson, Azar & Azar, Montgomery, AL, for Madison Equity Mortg. Co.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

### INTRODUCTION

This cause is before the court on Defendant Citicorp Mortgage, Inc.'s ("Citicorp") Motion for Summary Judgement filed on November 3, 1994.

Defendant has filed a brief in support of its motion, along with affidavits and documentary evidence. Plaintiff responded to the defendant's arguments on November 23, 1994, and has also filed affidavits, documents, and deposition testimony. Defendant replied to the plaintiff's response on December 2, 1995. Finally, the court heard oral argument on this matter on February 21, 1995, in Montgomery, Alabama. At that hearing, both parties agreed that there were no material issues of fact, and that the defendant's motion could be ruled on as a matter of law by this court.

This is a suit for damages based on alleged violations of the federal Truth in Lending Act ("TILA" or "the Act"). The first issue to be resolved on this motion is whether Citicorp is an "assignee of [a] creditor" under the Act and therefore subject to liability under the Act for the disclosure violations that plaintiffs allege. Secondly, Citicorp contends that under no circumstances can it be liable on plaintiff's claim for restitution. The court will not address the substance of the plaintiffs' claims.

Defendant argues that it was given only the rights to service the mortgage, and as such should not be considered an assignee as the term is used in the TILA. Plaintiff has set forth a number of different arguments in opposition to the defendant's motion.

For the reasons set forth below, and based on the evidence currently before the court, the court finds that the defendant Citicorp is an assignee under the terms of the TILA, and as such may be liable for certain violations of that Act. The court further finds that issues of fact exist as to the claim for restitution. Therefore, the Defendant's Motion for Summary Judgement is due to be denied.

### FACTS

As stated above, the facts in this case regarding assignment are not in dispute. The Myers refinanced the existing debt secured by their residence by taking out a new loan from Madison Equity Mortgage Company ("Madison"). The Myers executed a note in the amount of the loan and secured this note by giving Madison a mortgage on their residence ("the Myers' mortgage" or "the mortgage"). On the same day, Madison sold the loan to Resource Bancshares Mortgage Group, Inc. ("Resource"). In connection with the sale, Madison assigned the mortgage "together with the debt thereby secured ..." to

Resource. Resource recorded this assignment.

Resource then sold the Myers' mortgage to the Federal Home Loan Mortgage Corporation ("Freddie Mac"). As part of this transaction, Resource executed and delivered an assignment of Notes and Mortgages to Freddie Mac. This assignment was not recorded. Additionally, by the terms of the agreement, Resource retained the rights to service the loan on behalf of Freddie Mac. Subsequently, Resource sold the rights to service several mortgages, including the Myers', to Citicorp. As part of this transaction, Resource and Citicorp entered into a Mortgage Servicing Purchase and Sale Agreement. Under this document, it is clear that Citicorp bought only the rights to service the Myers' mortgage, and not the mortgage itself.

However, because of the regulations under which Freddie Mac operates, in order to transfer the servicing rights to Citicorp, it was necessary for Resource and Citicorp to take several additional steps. First, Resource retrieved the unrecorded assignment of the mortgage that it had given to Freddie Mac. Then Resource assigned the mortgage, together with the note and the debt, to Citicorp and this assignment was recorded. Citicorp then assigned the mortgage, note, and debt to Freddie Mac. This assignment was not recorded. Once this was complete, Freddie Mac again was in possession of the unrecorded assignment of the Myers' mortgage, note and debt. However, Citicorp, by virtue of its recorded assignment, was the record owner of the Myers' mortgage. Citicorp was also the owner of the servicing rights and as such serviced the Myers' mortgage for a fee. That fee was based on, at least in part, a percentage of the outstanding balance on the debt held by Freddie Mac. There is no dispute that Citicorp does not currently own the Myers' mortgage or their debt, having made an assignment to Freddie Mac.

## SUMMARY JUDGMENT STANDARD

■ Under *Fed.R.Civ.P.* 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. at 2552-53.

■ Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c). As stated above, both parties agreed at oral argument that there were no material issues of fact in dispute so the issue for the court is whether the undisputed material facts entitle Citicorp to a judgment as a matter of law.

## TRUTH IN LENDING ACT

The Truth in Lending Act is designed to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. The Act provides a cause of action against a lender who deceives a consumer by, for example, adding hidden costs or charges to the loan agreement. The Act is primarily focused at the entity that is defined as a "creditor," usually the entity that wrote the loan itself or to whom payment was originally due on the loan. However, Congress also provided a cause of action against an subsequent assignee of the original loan in certain circumstances. 15 U.S.C. § 1641(a). Under the terms of this section, where there is a violation of the Truth in Lending Act that is apparent *on the face* of the instrument, an assignee of a creditor may be held liable for that violation. 15 U.S.C. § 1641(a). The exact language of the Act is: "[a]ny civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary." *Id.*

The Act defines a "creditor" as "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness ..." 15 § 1602(f)(2), 12 C.F.R. § 226.2(a)(17). Although neither the Act nor the regulations promulgated by the Federal Reserve Board to effectuate the goals of the TILA define the term assignee, the regulations provide that any term not otherwise defined under the Act is to have the general meaning given to it by state law or contract. 12 C.F.R. § 226.3(b)(3).[1] In order to be liable under the TILA, then, Citicorp must be found to be an assignee of the Myers' mortgage and loan. The court will analyze this case using the general definition of assignee, as that term is

commonly used. According to Black's Law Dictionary, an assignee is "A person to whom an assignment is made." Black's Law Dictionary 152–153 (4th ed. 1968). An assignment is defined as the "transfer or making over to another of the whole of any property, real or personal, in possession or action, or of any estate or right therein." *Id.* at 153. *See Holywell v. Smith,* 503 U.S. 47, 53–54, 112 S.Ct. 1021, 1025, 117 L.Ed.2d 196 (1992) (accepting Black's definition of "assignee" and "assignment" as "the usual definition[s] ... in both ordinary and legal usage.").

■ Citicorp contends that it is not an assignee and should not be held liable under the Truth in Lending Act. It bases this argument on the fact that when it contracted to buy the rights to service the Resource mortgages, including the mortgage at issue here, Freddie Mac already owned the notes and mortgages themselves, pursuant to the sale and the unrecorded assignment. Citicorp therefore argues that Resource did not have any ownership rights in the notes and mortgages that it could have transferred to Citicorp. With no ownership interest, the notes and mortgages were at all times after Resource's assignment to Freddie Mac the property of Freddie Mac. Citicorp contends that all Resource owned was the servicing rights and, therefore, that is all that it could assign.

However, upon careful review of the documents and briefs of the parties, it appears uncontested that at some point following the sale of servicing rights to Citicorp, Resource retrieved the unrecorded assignment from Freddie Mac, in compliance with Freddie Mac's procedure. At this time, Resource was already the record owner of the note and mortgage. When it retrieved the assignment, however, it also became the actual owner of the mortgage and the debt it secured.

Pursuant to the contracts involved, Resource promptly assigned the mortgages to Citicorp. The language in the document memorializing this transaction is plain. Titled

---

1. The Board of Governors of the Federal Reserve System is empowered under the TILA to promulgate regulations that are in line with the object of the Act. 15 U.S.C. § 1604(a). The regulation is referred to as Regulation Z. 12 C.F.R. § 226.1(a).

an "Assignment of Mortgage," it states that "For value received, the undersigned, Resource Bancshares Mortgage Group, Inc. . . . does hereby grant, bargain, sell, convey and assign unto Citicorp Mortgage, Inc. . . . that certain mortgage executed by [the Myers] . . . together with the debt thereby secured, the note therein described and all Interest of the undersigned in and to the lands and property conveyed by said mortgage." Citicorp recorded this assignment, and promptly reassigned the mortgage to Freddie Mac, using the same language in that document. The assignment from Citicorp to Freddie Mac was, as noted above, not recorded.

■ Based on the documents before the court, it is clear that Citicorp was at one time, if only for an instant, an assignee of a creditor. To hold otherwise would be contrary to the purpose of the Truth in Lending Act. Designed to protect consumers, the Act requires entities that receive assignments of mortgages to be sure that there are no TILA violations on the face of the document. To be sure, assignees are not liable to the same extent as creditors, however, clear violations, those "on the face" of the disclosure statements, will create liability in the assignee. *See Meyers v. Clearview Dodge Sales, Inc.,* 539 F.2d 511, 515 (5th Cir.1976); [2] *cert. den.* 431 U.S. 929, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977).

Additionally, to hold that Citicorp was not an assignee would mean that the documents that moved from Freddie Mac to Resource, and from Resource to Citicorp, and finally from Citicorp to Freddie Mac, were never intended to have the legal consequences that their language clearly carries. To so hold would essentially label these exchanges as some sort of legal smoke screen without design or purpose. Obviously this is not the case, nor is this argument advanced by either side. The court will therefore presume the documents to have the plain legal ramifications that their language purports to give them.

Citicorp argues that it only received the assignment from Resource because it was required by a quirk in Freddie Mac's operating procedure. It further contends that it never had any intention of owning the loan itself, since it planned to, and did, immediately re-assign the mortgages to Freddie Mac. Citicorp has contended that the reason for this procedure is so that Citicorp appears as record owner of the mortgage and therefore receives notice of subsequent activity, such as liens. A full explanation as to why Freddie Mac requires this circuitous pattern of assignments when there is a sale of servicing rights is not before the court. It seems entirely possible, however, that the reasons might include forcing a servicing agent to come within the provisions for assignee liability under § 1641, thereby requiring a servicing agent in this circumstance to be sure that no violations of the TILA are apparent on the face of the instrument. As stated, that matter is not before the court and the court therefore does not rest its decision on speculation as to Freddie Mac's purposes.

■ It is not necessary to speculate, however, as to Citicorp's status as an assignee. The documentary evidence clearly establishes that Citicorp received an assignment of the Myers' mortgage, note, and debt from Resource. It therefore is, under the terms of the TILA, an assignee of a creditor. As such, should it be determined that there is a violation of the TILA that appears on the face of the document, Citicorp would be properly held jointly and severally liable for that violation.[3]

## RESTITUTION

■ Citicorp also seeks summary judgment on the plaintiffs' claim for restitution. Citicorp contends that it never possessed assets of the plaintiffs' and, therefore, cannot be liable for restitution. The issue of restitution is premature at this stage. In order to show that they are due restitution, plaintiffs

---

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit held as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**3.** *See Greenlee v. The Sterling Wheel, Inc.,* 693 F.Supp. 1396, 1398 (D.Ct.1988), which held that liability of assignee for disclosure violation apparent on the face of the instrument is joint and several.

must show that they suffered a harm at the hands of the defendant and that the defendant has been unjustly enriched as a result of defendant's culpable conduct. *See Opelika Production Credit Assoc., Inc. v. Lamb,* 361 So.2d 95, 99 (Ala.1978). It has not yet been determined whether or not there was a violation of the Truth in Lending Act at all. Further, it has not yet been shown that a violation was apparent on the face of the instrument such that Citicorp may be held liable. Finally, assuming the two previous statements are borne out by the evidence, it has not yet been proven that Citicorp derived a benefit from any alleged violation. Although Citicorp contends that the evidence before the court establishes its non-liability as a matter of law. It appears at this time that there are issues of fact to be developed before the court can consider Citicorp's possible liability for restitution. The court cannot say that the facts clearly show that Citicorp is entitled to judgment as a matter of law on this issue. Accordingly, the court declines to rule on the issue of restitution at this time.

### CONCLUSION

For the reasons set forth above the court finds that the Defendant's Motion for Summary Judgment is due to be DENIED.