[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 23, 2002
THOMAS K. KAHN
CLERK

No. 01-15828

D.C. Docket No. 00-02935-CV-G-E

JAMES H. GREER,
MAX FLOW CORPORATION,
ALANE A. BECKET,
D. ALEXANDER BARNES,
BECKET & LEE LLC,

Plaintiffs-Appellees,

versus

LINDA A. O'DELL,
MICHAEL O'DELL,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Alabama

**(September 23, 2002)**

Before TJOFLAT, WILSON and COWEN*, Circuit Judges.

_____

*Honorable Robert E. Cowen , U.S. Circuit Judge for the Third Circuit, sitting by designation.

COWEN, Circuit Judge:

At issue in this case is whether a loan servicer may appear in Bankruptcy Court to protect a claim relating to the debt that it services. We conclude that a loan servicer is a "real party in interest" with standing to conduct, through licensed counsel, the legal affairs of the investor relating to the debt that it services. We will affirm the order of the District Court reversing the Bankruptcy Court's order that the loan servicer had engaged in the unauthorized practice of law because the loan servicer had neither actual or legal authority to act on behalf of its principal through licensed counsel.

I.

Max Flow Corporation ("Max Flow") purchases accounts of consumer credit card holders who file Chapter 13 bankruptcy from credit card issuers. Max Flow prospectively agrees with the issuer to purchase certain of the issuer's qualifying Chapter 13 accounts as they arise, with the purchase price being calculated on a percentage of the account balance as of the petition date. Actual transfer of an account from a seller to Max Flow may not occur immediately following the bankruptcy filing, but a short time later (usually depending upon the accounting procedures of the sellers). Where the account does not transfer immediately, upon notice of the Chapter 13 filing, Max Flow is engaged to handle the account until

2

the account is actually transferred to insure that no bankruptcy filing dates are missed. When the deadline to file a bankruptcy claim precedes the transfer of the account, Max Flow files the claim identifying the creditor as "Max Flow on behalf of [issuer] and its assigns."

Max Flow entered into two agreements with MBNA America Bank, N.A. ("MBNA") in June of 1997–the "Purchase Agreement for Forward Flow Accounts" ("Purchase Agreement") and the "Interim Servicing Agreement" ("Interim Agreement"). Under the Purchase Agreement, Max Flow contracted with MBNA to purchase "each unsecured consumer credit card and line of credit account serviced and charged-off by [MBNA] on or after the date hereof during the Transfer Period . . . with respect to which one of the Debtors has filed a Chapter 13 Procedure during the Transfer Period." The Interim Agreement delegated to Max Flow the responsibility for administering MBNA accounts purchased by Max Flow prior to transfer of those accounts to Max Flow. It specified that Max Flow would use the law firm of Becket & Lee to provide legal services for MBNA until such time as the account was transferred to Max Flow.

Prior to the institution of the bankruptcy suit in this appeal, Debtors Michael and Linda O'Dell filed Chapter 13 bankruptcy in September of 1997 ("1997 Bankruptcy"). Max Flow, on behalf of MBNA, filed a general unsecured claim for

$4,489.15 for unpaid prepetition charges incurred on a credit card issued by MBNA. This claim in the prior Chapter 13 proceeding is the exact same type of claim at issue in the present Bankruptcy proceeding, and was processed by the Bankruptcy Court without any objection. The Bankruptcy Court confirmed Debtors' plan in the 1997 Bankruptcy case in May of 1998, allowing the unsecured $4,489.15 claim. The 1997 Bankruptcy was dismissed in October of 1999.

In November of 1999, Debtors filed the Chapter 13 bankruptcy case underlying this appeal, along with a "Schedule F–Creditors Holding Unsecured Non-Priority Claims" ["Schedule F"]. Schedule F listed Max Flow as a creditor; the related claim was $4,515.95. Debtors declared the schedules true and correct to the best of their knowledge.

Max Flow filed a proof of claim (Claim No. 15) for the debt associated with the O'Dell account: $4,589.15, identified as "Max Flow Corp. On Behalf of MBNA America Bank N.A. And Its Assigns." On five different occasions, the Debtors amended Schedule F, each time acknowledging the O'Dell account debt and that Max Flow had an interest in the claim.[1]

---

[1]Claims set forth on Schedule F appeared as follows:

| FILING DATE | CREDITOR | AMOUNT |
|---|---|---|
| February 14, 2000 | MBNA America (Max Flor) [sic] | $ 4,515. |

4

Despite Debtors' five sworn schedules, they filed an objection to Claim No. 15, alleging that Max Flow was not a party in interest.[2]  Max Flow filed a "Response by Max Flow Corp. On Behalf of MBNA America, N.A., and its Assigns," in which Max Flow asserted that it had authority to file claims on behalf of MBNA.  Max Flow's response included the affidavit of Kevin Matyniak, manager of the bankruptcy processing department for MBNA.  Matyniak testified that MBNA authorized Max Flow to file a claim on its behalf.

| | | |
|---|---|---|
| May 4, 2000 | MBNA America (Max Flow) | $ 4,515.95 |
| May 15, 2000 | MBNA America (Max Flow) | $ 4,295.08 |
| June 1, 2000 | MBNA America (Max Flow) | $ 4,489.15 |
| June 7, 2000 | MBNA America (Max Flow) | $ 4,489.15 |

District Court Memorandum Opinion of October 4, 2001, at 5.

[2]The objection actually named "National Credit Service" and not Max Flow, with regard to Claim No. 15.  The District Court presumed this was in error, and that Debtors intended to identify Max Flow (rather than National Credit Service) as the entity which allegedly was not a party in interest.  *See* District Court Memorandum Opinion of October 4, 2001, at p. 7 n.6.

Debtors filed a motion to strike Max Flow's reply alleging that Max Flow

was not a real party in interest. An evidentiary hearing followed in which the

Bankruptcy Court admitted as Exhibit 1 the Debtor's Confirmation Order from the

Debtors' 1997 Bankruptcy case, which had allowed the claim identifying the

creditor in the exact same manner identified in the current case. Nevertheless, the

Bankruptcy Court sustained the Debtors' Objection to disallow Claim No. 15 and

granted the motion to strike.[3] A separate hearing was then held to determine

---

[3]The Bankruptcy Court made the following rulings:

1) Ruling that the proof of claim form filed by Max Flow was a misleading adaptation of the official proof of claim form because it identified the creditor as "Max Flow on Behalf of MBNA and its Assigns," rather than "MBNA by Max Flow," or "MBNA through Max Flow," or "MBNA by means of Max Flow," or "MBNA via Max Flow," *In re O'Dell*, 251 B.R. 607, 610-16 (Bnkr. N.D. Ala. 2000);

2) Ruling that Max Flow was not a creditor of the Debtors and that Max Flow had filed false and misleading information with its proof of claim which indicated that Max Flow was the creditor, *id.* at 616-18;

3) Ruling that Max Flow's authority to act on behalf of MBNA was limited to filing proofs of claim, *id.* at 6210-21;

4) Ruling that even if MBNA had granted Max Flow authority to defend the Debtors' objection to the proof of claim, such authority cannot be exercised because an agent cannot handle the legal affairs of the principal, *id.* at 620-21;

5) Ruling that Max Flow engaged in the unauthorized practice of law when it responded to the Debtors' objection to claim notwithstanding that Max Flow's response was through licensed counsel, *id.* at 624-26;

6) Ruling that Max Flow's former counsel facilitated its engaging

6

whether sanctions would be imposed against Max Flow and its prior counsel for their unauthorized practice of law. The Bankruptcy Court concluded that Max Flow's former counsel had facilitated the unauthorized practice of law.[4]

Max Flow filed a motion for reconsideration, accompanied by an affidavit explaining the nature of its business, its relationships with MBNA and Becket & Lee, and its actual ownership of the claim at issue. It also argued that even if it did not own the claim it still had a pecuniary interest in its contractual obligations with MBNA, making Max Flow a party in interest with a right to file and defend Claim No. 15.

At the hearing on the motion for reconsideration, the executive vice president of Max Flow, John Garzone, explained that due to accounting principles, sellers are not always able to sell accounts as soon as they receive bankruptcy notification. Explanations of the Purchase Agreement and Interim Agreement were also submitted to the Bankruptcy Court. Garzone also testified that he was

---

in the unauthorized practice of law; *id.* at 625-26; and
7) Ruling that the actions of Max Flow and its counsel were actionable, *id.* at 626.

[4]As a result, Max Flow's former counsel filed motions to withdraw as counsel for Max Flow. The Bankruptcy Court granted the motion to withdraw filed by James H. Greer, but did not rule on the motions to withdraw filed by Alane Becket, Alex Barnes, and Becket & Lee.

unaware of issues in the O'Dell case until he was given the Bankruptcy Court's opinion. According to Garzone, upon investigating the matter, Max Flow discovered that it had been the owner of the account since February of 1998, as evidenced by a bill of sale. Garzone identified for the Bankruptcy Court the computer file for the record and pointed out the reference to the O'Dell account within the file.

The Bankruptcy Court denied the motion for reconsideration, concluding that there was no basis to consider the new evidence under the standard for newly discovered evidence of Bankruptcy Rule 9024 (an adoption of Federal Rule of Civil Procedure 60(b)). The Bankruptcy Court then proceeded to review the evidence at the hearing and concluded that Max Flow did not own the claim. The Bankruptcy Court refused to hear additional testimony concerning the provisions of the Interim Agreement relative to ownership of the claim by Max Flow, concluding that Max Flow had not bought the claim.

The Appellees appealed to the United States District Court for the Northern District of Alabama, and Debtors filed a Motion to Dismiss the appeal for lack of jurisdiction. The District Court reversed the Bankruptcy Court,[5] and in its Final

---

[5]The District Court made the following, seven holdings:
    1)    An agent authorized by its principal to pursue and protect the interest of the principal's claim can lawfully defend an

8

Order declared all outstanding motions (including the Debtors' Motion to Dismiss) moot by the entry of this Final Order.[6] The Debtors appeal. For the following reasons, we will affirm in all respect the order of the District Court.

<div style="border-top: 1px solid; width: 30%;"></div>

objection to said claim on behalf of the principal.

2) The bankruptcy Court erred in its August 3, 2000, order by holding that Max Flow lacked either standing or legal authority to defend a proof of claim it filed on behalf of MBNA and its assigns; Max Flow does have the authority and standing to do so.

3) Max Flow's conduct in defending the subject proof of claim did not constitute unauthorized practice of law; all of Max Flow's activities were conducted by an attorney.

4) The Bankruptcy Court erred in its August 3, 2000, order by holding that Max Flow's counsel facilitated Max Flow's engagement in the unauthorized practice of law; counsel did not.

5) The conduct of Max Flow and its counsel in defending the proof of claim is NOT sanctionable; it had standing to defend the claim and the legal authority to do so.

6) The Bankruptcy Court erred in its September 7, 2000 [entered on September 11, 2000], memorialization of its September 5, 2000, oral order that it did not need to consider Max Flow's "newly discovered evidence" submitted at its motion for reconsideration hearing.

7) The decision of the Bankruptcy Court in *In re O'Dell*, 251 B.R. 607 (Bnkr. N.D. Ala. 2000) is REVERSED.

District Court Memorandum of October 4, 2001, at p. 25-26; District Court Final Order of October 4, 2001, at p. 1-2; District Court Order of October 15, 2001, at p. 1 (amending October 4, 2001 Final Order).

[6]The Final Order reads: "It is FURTHER ORDERED, ADJUDGED, and DECREED that all outstanding motions be and they hereby are DECLARED moot by the entry of this order." District Court Final Order of October 4, 2001, at p. 2.

9

II.

As was at issue before the District Court, the sole issue before us is whether a loan servicer is a "real party in interest" with standing to conduct, through licensed counsel, the legal affairs of the investor relating to the debt that it services. We answer this question in the affirmative. We review the Bankruptcy Court's factual findings for clear error, and review the District Court's conclusions of law *de novo*. *In re Fretz*, 244 F.3d 1323, 1326 (11ᵗʰ Cir. 2001); *In re Englander*, 95 F.3d 1028, 1030 (11ᵗʰ Cir. 1996).

We have jurisdiction over Debtors' appeal pursuant to 28 U.S.C. § 158(d) ("The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section."). *See also In re F.D.R. Hickory House, Inc.*, 60 F.3d 724, 727 (11ᵗʰ Cir. 1995) (discussing the more flexible standard of finality in appeals in bankruptcy orders: "we will review immediately 'even an order of marginal finality . . . if the question presented is fundamental to further conduct of the case.'") (citation omitted). It has previously been established by this Court that a Bankruptcy Court order which disallows a claim constitutes a final order which is appealable to both the District Court and the Court of Appeals. *In re Six*, 80 F.3d 452, 455 (11ᵗʰ Cir. 1996) ("In the bankruptcy proceedings, the bankruptcy judge sustained [the

10

debtor's] challenge to [the creditor's] claim and disallowed it. That was a final order and was properly appealed to the [D]istrict [C]ourt" and to the Court of Appeals).

## III.

The Bankruptcy Court held that the servicing agent, even for a disclosed principal, "neither possesses a claim nor stands as a creditor in this bankruptcy case." *In re O'Dell*, 251 B.R. at 616. It further held that, "When an agent's power and authority is limited, such must be strictly construed and the agent cannot assert powers which it had no right to understand was conferred unto it by the language authorizing the agent to act." *Id.* at 620 (citing *New York Life Ins. Co. v. Horton*, 9 F.2d 320, 323 (5th Cir.1925)). The Bankruptcy Court was in error.

A servicer is a party in interest in proceedings involving loans which it services. The Bankruptcy Code and Rule 17 of the Federal Rules of Procedure each have liberal standing provisions, designed to allow a party to appear as long as it has a direct stake in the litigation under the particular circumstances. 11 U.S.C. § 101(10)(A) ("'creditor' means entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."); 11 U.S.C. § 101(5)(A) ("'claim' means right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

11

unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."); *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (Congress intended to "adopt the broadest available definition of 'claim'"); *see also* 11 Fed. R. Civ. P. 17(a) ("Every action shall be prosecuted in the name of the real party in interest."); Comments to 1966 Amendment to Fed. R. Civ. P. 17 (the purpose of the real party in interest rule is "to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.").

Other courts have held in similar contexts that mortgage servicers are real parties in interest. *See, e.g., Myers v. CitiCorp Mortgage, Inc.*, 878 F.Supp. 1553, 1558 (M.D. Ala. 1995), aff'd, 208 F.3d 1011 (11th Cir. 2000) (unpublished table decision) (the servicing agent of a mortgage was the "assignee of the creditor as defined in the Federal Truth in Lending Act" and even a brief and vague assignment of the mortgage ownership rights made CitiCorp an assignee); *In re Tainan*, 48 B.R. 250, 252 (Bankr. E.D. Pa. 1985) (the purpose of Rule 17(a) is "to protect individuals from harassment of suits by persons who do not have the power to make final and binding decisions concerning prosecution, compromise and settlement. . . . An action may not necessarily be brought in the name of the person who ultimately will benefit from recovery, but rather *by the person who is entitled*

12

*to enforce the right.*" (emphasis added) (quoting *Kenrich Corp. v. Miller*, 256 F.Supp. 15 (E.D. Pa. 1966), aff'd, 377 F.2d 312 (3d Cir. 1967); 6 Wright & Miller, Federal Practice and Procedure ¶ 1543 (1971 2d reprint 1984)).

The real party interest principle is a means to identify the person who possesses the rights sought to be enforced, and in this case Max Flow possessed those rights. Max Flow had a clear and practical stake in the O'Dell bankruptcy proceedings, which warranted responding to the Debtors' objection to the claim. Under the Interim Agreement, Max Flow was *obligated* as a servicer to file a proof of claim on MBNA's behalf and to retain counsel to defend it, to collect payments, and to perform administrative services with respect to the claim. Max Flow's economic interest was directly affected by the Debtors' bankruptcy since Max Flow was entitled to a fee with respect to amounts it collected and was obligated to pay the fees of the outside counsel Max Flow was required to retain for MBNA. The whole purpose behind the Interim Agreement was to provide a mechanism for legitimate debt collection activities in bankruptcy during the period between referral of the claim and Max Flow's acquisition of title to the claim in its own name.

We conclude on the facts of this case that Max Flow was the actual owner of Claim No. 15. Even assuming, however, that Max Flow was merely the servicer

for a disclosed principal of that claim, it was a party in interest entitled to defend

the claim on behalf of MBNA and to take all required action through counsel to

protect its interests and those of MBNA. The order of the District Court will be

AFFIRMED in all respects.