**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1256
_____

INTERNATIONAL TRANSPORT MANAGEMENT CORP;
OCEAN NAVIGATOR EXPRESS LINE

v.

BROOKS FITCH APPAREL GROUP LLC; JOSEPH SAFDIEH,
Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-11-cv-01921)
District Judge: Honorable Esther Salas
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 16, 2023

Before: CHAGARES, *Chief Judge*, MATEY, and FUENTES, *Circuit Judges*.

(Filed: April 18, 2024)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

FUENTES, *Circuit Judge*.

Brooks Fitch Apparel Group, LLC ("Brooks Fitch") failed to pay numerous Chinese manufacturers for large shipments of apparel that it imported into the United States for sale to mass retailers. As a result, the Chinese manufacturers demanded payment from the oceanic shipping companies that were involved in transporting the shipments to the United States, including Ocean Navigator Express Line ("ONEL"), Cargo Services Far East Limited ("Cargo Services Far East"), and Cargo Services (China) Ltd. ("Cargo Services China"). After those demands were settled, ONEL sued Brooks Fitch and its principal, Joseph Safdieh, for damages and other relief. Brooks Fitch and Safdieh argued that ONEL could not recover damages because Cargo Services Far East and Cargo Services China (together, "Cargo Services"), not ONEL, paid the demands. The District Court disagreed and entered judgment against Brooks Fitch and Safdieh. Because the District Court correctly found that ONEL can recover damages, we will affirm.

# I.[1]

## A.

Brooks Fitch is a New York limited liability company that was formerly in the business of importing apparel from foreign manufacturers for sale to mass retailers in the United States.[2] From 2009 to 2011, Brooks Fitch bought large quantities of apparel from 14 Chinese manufacturers. Brooks Fitch hired International Transport Management

---

[1] Because we write solely for the parties, we recite only the facts necessary to our disposition.

[2] In April 2013, Brooks Fitch entered liquidation and is no longer in business.

Corporation ("ITMC"), a New Jersey corporation, to act as its freight-forwarding agent and coordinate the shipment of the apparel to the United States. In turn, ITMC contracted with ONEL, a Hong Kong corporation, to serve as the non-vessel operating common carrier. ONEL arranged for the shipments to be transported to the United States by various shipping lines and vessels, and ITMC acted as ONEL's release agent once the shipments arrived in the United States.

For each of the shipments at issue, ONEL received the shipment from the Chinese manufacturer and then gave the manufacturer a bill of lading as proof of title. Each bill of lading stated that it was issued by Cargo Services Far East or Cargo Services China "as agent for" ONEL.[3] ONEL and Cargo Services China are both wholly-owned subsidiaries of Cargo Services Far East. Under normal industry practice, the manufacturer typically transfers the bill of lading to the buyer after payment, and the buyer then presents the bill of lading to the carrier for release of the goods. Here, however, ITMC and Brooks Fitch agreed to an arrangement that permitted the shipments to be released to Brooks Fitch while their payment was still pending. In exchange, Brooks Fitch provided ITMC with collateral checks and, in three instances, entered into indemnity agreements with ITMC, under which Brooks Fitch agreed to indemnify ITMC, ONEL, and Cargo Services Far East, along with "their respective parents, subsidiaries and affiliates," from "damages of any kind or nature arising out of or connected with the [enumerated] shipments of apparel," including "actual

---

[3] Cargo Services Far East and Cargo Services China performed the same function in these transactions, except that Cargo Services Far East operates in Hong Kong and Cargo Services China operates in mainland China.

or alleged claims, liabilities, losses, demands, causes of action, judgments, settlements and expenses . . . ."[4]

After Brooks Fitch failed to pay the manufacturers, ITMC attempted to cash the collateral checks, which bounced. Many manufacturers made demands for payment and brought lawsuits in Hong Kong and mainland China against ONEL, Cargo Services Far East, and/or Cargo Services China. Cargo Services paid the manufacturers a total of $4,155,006.50 in settlements.

**B.**

In April 2011, ONEL and ITMC filed this lawsuit against Brooks Fitch, alleging claims of fraud, conversion, breach of contract, embezzlement, replevin, imposition of a constructive trust, exoneration, attachment, and indemnity.[5] In September 2014, Plaintiffs amended their complaint to assert two additional claims for fraud and alter-ego liability against Safdieh. Plaintiffs sought compensatory and punitive damages, indemnification, injunctive relief, a constructive trust, and attorneys' fees and costs.

After the District Court denied Plaintiffs' motions for summary judgment without prejudice, the parties agreed to proceed to a bench trial solely on the issue of Brooks Fitch's liability and to bifurcate the issue of Safdieh's individual liability. At the opening of the trial in October 2017, the parties agreed to dismiss ITMC from the case. Following the trial, the District Court concluded that Brooks Fitch was liable to ONEL and awarded ONEL $4,155,006.50. In October 2018, the District Court amended that judgment against

---

[4] *See, e.g.*, App. 327-28.
[5] The District Court had jurisdiction under 28 U.S.C. § 1332.

Brooks Fitch to include an additional $40,000 payment, and denied Brooks Fitch's motion for reconsideration on the issue of whether ONEL was a proper plaintiff.

Subsequently, in an August 2019 order, the District Court granted ONEL's motion for summary judgment to pierce Brooks Fitch's corporate veil and hold Safdieh liable for Brooks Fitch's obligations to ONEL and directed ONEL to submit calculations for pre- and post-judgment interest. On September 14, 2020, the District Court granted ONEL's motion to amend the judgment for pre- and post-judgment interest (bringing the total award to $4,914,478.09) and stated that it would permit ONEL to make another motion for additional interest on the pre-judgment interest already awarded. On September 21, 2020, ONEL filed a Notice of Submission of a Judgment in a Civil Action Pursuant to Local Civil Rule 58.1, in which it stated that it would not file another motion for pre-judgment interest so that final judgment could be entered. However, entry of the Local Civil Rule 58.1 Judgment was delayed while the District Court considered Defendants' prior counsel's motion to withdraw and then Defendant's new counsel's motion for reconsideration. On January 11, 2022, the Clerk entered the Local Civil Rule 58.1 Judgment, which had been signed on January 6, 2022, as well as the District Court's order denying the motion for reconsideration and closing the case, which had been signed on January 10, 2022. This appeal followed.

**II.**

ONEL has moved to dismiss this appeal as untimely. ONEL argues that the District Court's September 14, 2020 order granting ONEL's motion to amend the judgment for pre- and post-judgment interest constituted an immediately appealable final order. For

5

jurisdiction to attach under 28 U.S.C. § 1291, however, an order must "fully resolve all claims presented to the district court" and leave "nothing further for the district court to do."[6] Here, ONEL's fraud claim against Safdieh remained outstanding until the District Court entered the January 11, 2022 judgment that resolved all claims as to all parties.

ONEL argues that its fraud claim against Safdieh was merely an alternate theory of recovery that was rendered moot and redundant when the District Court granted ONEL's motion for summary judgment on its veil-piercing claim. But, in *Owens v. Aetna Life & Casualty Co.*, we explained that even an outstanding cross-claim that "became groundless once [the defendant's] motion for summary judgment was granted" hindered the appealability of a judgment.[7] To consider the practical effect of the cross-claim there—or the fraud claim at issue here—"would only foster uncertainty in an area of the law that must remain clear."[8]

It is true that "an otherwise non-appealable order may become final for the purposes of appeal where a [party] voluntarily and finally abandons the other claims in the litigation."[9] However, ONEL indicated that it might pursue its fraud claim (in addition to

---

[6] *Aluminum Co. of Am. v. Beazer E., Inc.*, 124 F.3d 551, 557 (3d Cir. 1997) (citing *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

[7] 654 F.2d 218, 220 n.2 (3d Cir. 1981).

[8] *Id.*; *accord Knox v. United States Lines Co.*, 294 F.2d 354, 360 (3d Cir. 1961) ("[I]n litigation involving multiple claims judgment on one claim cannot become final until final disposition of all claims.").

[9] *Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 382 (3d Cir. 1996).

its veil-piercing claim)[10] up until it filed the proposed Local Civil Rule 58 Judgment.[11] And even after the proposed Local Civil Rule 58 Judgment was filed, it was not clear that the case was finally resolved until January 11, 2022, when judgment was entered and the case was closed.[12]

Based on the foregoing, we will exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291 and deny ONEL's motion to dismiss the appeal. We review a district court's findings of fact for clear error, and exercise plenary review over its conclusions of law.[13] A district court's holding with respect to Federal Rule of Civil Procedure 17 is reviewed for abuse of discretion.[14]

---

[10] *See, e.g.*, D.C. ECF 181 at 6 (ONEL's October 17, 2017 pre-trial brief stating that it agrees to sever its fraud and veil-piercing claims against Safdieh for later proceedings); ONEL's Opp. to Mot. to Dismiss ("Opp."), Ex. E at 1 (ONEL's January 7, 2019 letter requesting leave to move for summary judgment on its veil-piercing claim to "narrow the issues and limit the factual disputes relevant to Joseph Safdieh's liability so as to bring this matter closer to a final resolution").

[11] *See* App. 768 (ONEL's September 21, 2020 notice of its proposed Local Civil Rule 58.1 Judgment stating that the District Court's August 14, 2019 order "was final as to all the parties and disposed of all causes of action").

[12] *See, e.g.*, App. 768 n.1 (ONEL's September 21, 2020 notice of its proposed Local Civil Rule 58.1 Judgment requesting that the District Court enter a "final judgment"); Defs.' Mot. to Dismiss ("Mot."), Ex. M at 1 (Defendants' September 28, 2020 letter requesting that the District Court "defer action" on ONEL's proposed judgment until their counsel's motion to withdraw is decided); Opp., Ex. G at 4 (ONEL's October 19, 2020 brief urging the District Court not to "further defer the formal Entry of Judgement in this matter"); Mot., Ex. P at 3 (District Court's March 26, 2021 order directing parties to "file a joint status letter . . . addressing specifically what remains to be done in this case"); Mot., Ex. X at 3 (ONEL's June 8, 2021 letter arguing Defendants' "ongoing attempts to delay the entry of a Final Judgment must be rejected so as to bring some finality to this case" and noting that "[t]he Federal Rules of Appellate Procedure provide more than adequate time from the entry of a final judgment for the Defendants to consider whether to file an appeal").

[13] *See Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 514-15 (3d Cir. 2012).

[14] *See ICON Grp., Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473, 476 n.3 (3d Cir. 1987).

## III.

Brooks Fitch argues that ONEL is not a "real party in interest" under Rule 17 because it was Cargo Services, not ONEL, that paid the manufacturers' demands. ONEL contends, and the District Court held, that it was exposed to liability and suffered harm as a result of Brooks Fitch's failure to pay the manufacturers. We agree with ONEL that it can recover damages as a real party in interest.

Rule 17 provides that "[a]n action must be prosecuted in the name of the real party in interest."[15] "The phrase, 'real party in interest,' is a term of art utilized in federal law to refer to an actor with a substantive right whose interests may be represented in litigation by another."[16] This rule "ensures that under the governing substantive law, the plaintiffs are entitled to enforce the claim at issue."[17] "There may be multiple real parties in interest for a given claim, and if the plaintiffs are real parties in interest, Rule 17(a) does not require the addition of other parties also fitting that description."[18] "[T]he modern function of the rule . . . is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata."[19]

---

[15] Fed. R. Civ. P. 17(a)(1).

[16] *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 934–35 (2009) (citing Fed. R. Civ. P. 17(a)).

[17] *HB Gen. Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1196 (3d Cir. 1996) (citing cases).

[18] *Id.* (citing 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1543, at 340 (2d ed. 1990); Fed. R. Civ. P. 17(a)).

[19] Fed. R. Civ. P. 17 advisory committee's note to 1966 amendment; *see also Wieburg v. GTE Southwest Inc.*, 272 F.3d 302, 306 (5th Cir. 2001) ("The purpose of this provision is

Courts often consider business customs and practice in determining whether a plaintiff is a real party in interest under Rule 17.[20] "In cases like the present involving maritime commerce, Rule 17(a) has been construed to accommodate the somewhat flexible rules that have developed in the admiralty practice defining the parties who may properly commence an action for damage to cargo."[21] "[A]n exclusive interest in the damaged goods [has] not been required in all cases;" rather, "courts have often looked to the practicalities of the situation in assessing the likelihood that a carrier might ultimately be exposed to a double recovery and, when satisfied that double recovery is not a threat, and that the plaintiff has a proper interest in maintaining the action, have allowed that plaintiff to maintain the action."[22]

With these considerations in mind, we conclude that ONEL is a real party in interest. As noted, Rule 17 has a "liberal standing provision[], designed to allow a party to appear as long as it has a direct stake in the litigation under the particular circumstances."[23] ONEL clearly had a sufficient interest in maintaining this action. Both ONEL and Cargo Services

---

to assure a defendant that a judgment will be final and that res judicata will protect it from having to twice defend an action, once against an ultimate beneficiary of a right and then against the actual holder of the substantive right." (internal quotations omitted)).

[20] *See Prevor-Mayorsohn Caribbean, Inc. v. P.R. Marine Mgmt., Inc.*, 620 F.2d 1, 4 (1st Cir. 1980) (considering who may recover damages under "[l]ong-established admiralty practice").

[21] *Id.* (citing 2A Benedict on Admiralty § 53 (7th ed. 1977)); *see also* Preliminary Draft of Proposed Amendments to Rules of Civil Procedure for the United States District Courts, 34 F.R.D. 325, 341 (1964) ("A recurring factual situation in maritime cases may lead to injustice if the requirement as to real party in interest is rigidly applied.").

[22] *Prevor-Mayorsohn*, 620 F.2d at 4–5 (citing *Elia Salzman Tobacco Co. v. SS Mormacwind*, 371 F.2d 537, 540 (2d Cir. 1967), and *Levatino Co. v. M/S Helvig Torm*, 295 F. Supp. 725, 728 n.4 (S.D.N.Y. 1968)).

[23] *Greer v. O'Dell*, 305 F.3d 1297, 1302 (11th Cir. 2002).

were inextricably involved in the transactions with the Chinese manufacturers and the subsequent lawsuits. ONEL arranged for the transport of goods from China to the United States and issued the bills of lading through Cargo Services. The bills of lading listed ONEL as the "carrier" and denoted Cargo Services "as agent for" ONEL.[24] Thus, ONEL was exposed to liability when Brooks Fitch failed to pay the Chinese manufacturers and those manufacturers demanded payment from Cargo Services and, in some actions, ONEL.

To "protect[] ITM[C] and ONEL from liability to manufacturers," Brooks Fitch had provided ITMC, ONEL's release agent, with "post-dated 'collateral checks' and, in three instances, written indemnity agreements."[25] But the collateral checks bounced when attempts were made to cash them, and Brooks Fitch breached its obligations under the indemnity agreements. In those agreements, Brooks Fitch agreed to indemnify ITMC, Cargo Services Far East, and ONEL, along with "their respective parents, subsidiaries and affiliates," from "damages of any kind or nature arising out of or connected with the [enumerated] shipments of apparel," including "actual or alleged claims, liabilities, losses, demands, causes of action, judgments, settlements and expenses."[26] ONEL and Cargo Services China are both wholly-owned subsidiaries of Cargo Services Far East. Under New York law, which governs the agreements, this unambiguous language manifests a

---

[24] App. 314.

[25] Appellants' Br. at 7 (internal citation omitted); *see also* App. 24, 581-82. Under New York law, "a principal[] who is not a signatory to a contract may enforce a contract entered into by its authorized agent." *See* Glen Banks, 28 N.Y. Prac., Contract Law § 19:3 (2023) (citing *Granite Partners, L.P. v. Bear, Stearns & Co.*, 58 F. Supp. 2d 228, 247 (S.D.N.Y. 1999)).

[26] *See, e.g.*, App. 327.

"clear and unmistakable intent" to indemnify ONEL from losses incurred in connection with the transactions at issue.[27]

Moreover, we see no risk that Brooks Fitch will be exposed to double recovery. The alleged nonpayment took place between 2009 and 2011, so any potential action by Cargo Services based upon those alleged non-payments would be time-barred.[28] And principles of res judicata ensure that neither Cargo Services (which was "part of a single operation" with ONEL)[29] nor ITMC (which was once a plaintiff in this lawsuit but was dismissed) could succeed in a successive claim for damages against Brooks Fitch.

That Cargo Services paid the settlements does not therefore prevent ONEL from recovering here where "a loss plainly has occurred" and ONEL, which was named in some of the Chinese demands, initiated suit.[30] Because ONEL can recover damages as a real party in interest, we reject as extraneous Brooks Fitch's remaining arguments concerning the necessity of substituting Cargo Services as plaintiff or piercing ONEL's corporate veil.

---

[27] *Cf. Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir. 1993) ("[I]n New York indemnification agreements are strictly construed; a court cannot find a duty to indemnify absent manifestation of a 'clear and unmistakable intent' to indemnify." (citing *Heimbach v. Metro. Transp. Auth.*, 553 N.E.2d 242, 246 (N.Y. 1990))).

[28] *See* N.Y. C.P.L.R. § 213 (McKinney 2022) (statute of limitations for common-law fraud, breach-of-contract, and indemnity claims is six years after accrual). Nor could Cargo Services be added as a party at this late stage in the dispute. Among other reasons, Rule 17 does not permit joinder of a real party in interest to circumvent the limitations period. *See Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 563 (3d Cir. 2008).

[29] App. 22 (quoting *Prevor-Mayorsohn*, 620 F.2d at 5).

[30] *See Unilever (Raw Materials) Ltd. v. M/T Stolt Boel*, 77 F.R.D. 384, 390–91 (S.D.N.Y. 1977) ("Technical niceties of relationship or lack thereof between the shipper and the consignee ought not to obscure the facts that the defendant is exposed to only one kind and amount of liability no matter which plaintiff sues; that a loss plainly has occurred; and that a party who was no stranger to the business transaction initiated suit within the time limit . . . .").

11

## IV.

For these reasons, we will deny ONEL's motion to dismiss the appeal and affirm the order entered by the District Court on January 11, 2022.